J-A24034-21

2022 PA Super 1

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD HARRIS | : | No. 1981 EDA 2020 |

Appeal from the Order Entered September 16, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005166-2019

BEFORE:  LAZARUS, J., DUBOW, J., and PELLEGRINI, J.*

OPINION BY PELLEGRINI, J.:                    **FILED JANUARY 03, 2022**

**I.**

The Commonwealth appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) granting the pretrial motion filed by Ronald Harris (Harris) to quash charges filed against him because there was no direct evidence adduced at the preliminary hearing that he shot the victim.

Harris was charged with attempted murder and related offenses after allegedly shooting Nisheed Stewart (Stewart).  When Stewart failed to show for any of the scheduled preliminary hearings, the Commonwealth presented testimony of the detective who took his statement identifying Harris as the shooter.  Harris was held for court on all charges based on our then-extant decision in **Commonwealth v. Ricker**, 120 A.3d 349 (Pa. Super. 2015)

_____

* Retired Senior Judge assigned to the Superior Court.

(***Ricker I***), which held that hearsay alone is enough to establish a *prima facie* case. While the case was pending, our Supreme Court overruled ***Ricker I*** in ***Commonwealth v. McClelland***, 233 A.3d 717 (Pa. 2020) (***McClelland II***), holding that the Commonwealth cannot rely on hearsay alone to establish a *prima facie* case at a preliminary hearing. Relying on ***McClelland II***, the trial court quashed all charges because there was no direct non-hearsay evidence that Harris shot Stewart.

On appeal, the Commonwealth asserts that ***McClelland II*** is inapplicable because it did not present hearsay alone at the preliminary hearing. While conceding that it relied on hearsay evidence to identify Harris, the Commonwealth emphasizes it also presented non-hearsay evidence through its police witnesses that a crime was committed. In their view, as long as it presents some direct evidence for one element of a charged offense, then it is allowed to rely on hearsay alone for other elements of the crime, including identification of the defendant. The Commonwealth argues this expressly allowed under the rule of criminal procedure governing preliminary hearings, which provides that "[h]earsay evidence shall be sufficient to establish any element of an offense[.]" Pa.R.Crim.P. 542(E).

After review, we conclude that the trial court correctly applied ***McClelland II*** in holding there was insufficient evidence to establish a *prima facie* case as to each element at the preliminary hearing where the

Commonwealth relied on hearsay evidence alone to establish that Harris committed the offense.

## II.

### A.

On March 23, 2017, around 7:50 p.m., Philadelphia Police Officer Ryan Waltman (Officer Waltman) received a radio call of a male gunshot victim near the 3100 block of North Patton Street. When he arrived, Officer Waltman found Stewart bleeding from gunshot wounds to his right wrists and left thigh. Stewart was taken to a nearby hospital. Around 9:10 p.m., Detective John Drudin (Detective Drudin) obtained a statement from Stewart about what happened. Stewart described that Harris and his brother, Rasheed Harris, confronted him about stealing drugs from them. During the confrontation, both men pulled out guns and began firing, striking Stewart twice as he ran away. Based on this information, Detective Drudin went to the crime scene and found multiple projectiles and fired cartridge casings. He then went to his office and printed out photographs of Ronald Harris and Rasheed Harris. Detective Drudin returned to the hospital with the photographs. Stewart confirmed that the men in the photographs were the men who shot him.

The Commonwealth waited two years before finally filing its criminal complaint on May 9, 2019, at which time Harris was arrested and incarcerated for failing to post bail. In total, the Commonwealth charged Harris with eleven offenses: attempted murder, aggravated assault, intimidation, conspiracy to

commit murder, possessing instruments of crime, simple assault, recklessly endangering another person, terroristic threats, and VUFA offenses 6105, 6106 and 6108.[1]

**B.**

Stewart did not show for the first two scheduled preliminary hearings. When he failed to show for the third, the Commonwealth went ahead with the hearing and called Officer Waltman and Detective Drudin. Officer Waltman testified about responding to the call and finding Stewart with two gunshot wounds. Detective Drudin, meanwhile, testified about finding the ballistics evidence at the scene of the shooting. Through the detective's testimony, the Commonwealth presented Stewart's statement about the shooting and his photographic identification of Ronald Harris and Rasheed Harris as the men who shot him. Over Harris's objections, the municipal court admitted the hearsay evidence. At the end of the hearing, Harris argued the Commonwealth failed to establish a *prima facie* case because it presented only hearsay that he was one of the shooters. The Commonwealth countered that hearsay evidence alone was enough under **Ricker I**. The municipal court agreed with the Commonwealth and held all charges for court except intimidation.

_____

[1] 18 Pa.C.S. §§ 901(a), 2502(a), 2702(a), 4952(a), 903, 907(a), 2701(a), 2705, 2706(a)(1), 6105(a)(1), 6106(a)(1) and 6108.

After being held for court, Harris filed a pretrial motion to quash the charges.[2] The trial court granted the motion as to attempted murder but denied it as to the remaining charges. While the case was pending, the Pennsylvania Supreme Court decided **McClelland II** on July 21, 2020, overruling **Ricker I** and holding that hearsay evidence alone cannot establish a *prima facie* case at a preliminary hearing. **See McClelland II**, 233 A.3d at 734 ("[Pa.R.Crim.P.] 542(E) … does not permit hearsay evidence alone to establish all elements of all crimes for purposes of establishing a *prima facie* case at a defendant's preliminary hearing.").

Because of **McClelland II**, Harris filed a motion for reconsideration of his motion to quash. At the hearing, the Commonwealth informed the trial court that homicide detectives had been unable to locate Stewart and, consequently, it would have to rely on the transcript of the preliminary hearing. Finding **McClelland II** applicable, the trial court granted the motion to quash all charges because "there is no admissible evidence here which connects [Harris] to the crimes for which he was charged." Trial Court Opinion (TCO), 12/28/20, at 7. After the Commonwealth filed this appeal, the trial court lowered Harris's bail to an unsecured amount on October 17, 2020, bringing his 17-month pretrial incarceration to an end.

---

[2] A pretrial motion to quash is "the equivalent in Philadelphia practice of a pre-trial writ of *habeas corpus*." **Commonwealth v. Dantzler**, 135 A.3d 1109, 1111 (Pa. Super. 2016).

The Commonwealth now raises this issue for review:

Did the lower court err by quashing all charges on the purported ground of [**McClelland II**], where in the instant case the Commonwealth presented both non-hearsay and hearsay evidence at the preliminary hearing, all of which was admissible and together established a *prima facie* case sufficient to proceed to trial on all charges?

Commonwealth's Brief at 4.

### III.

We must first determine whether we have jurisdiction to entertain this appeal from an order quashing charges bound over for trial at a preliminary hearing due to lack of evidence. **See Commonwealth v. Young**, 246 A.3d 887, 888 (Pa. Super. 2021) (citation omitted) (subject matter jurisdiction is a question of law and may be raised by the court *sua sponte*).

Appellate review of any court order is a jurisdictional question defined by rule or statute. This principle applies to appellate review of a pretrial order. A court may consider the issue of jurisdiction *sua sponte*. In evaluating our jurisdiction to allow [a party's] appeal, we look to other criminal cases involving appeals of pretrial orders .... In this Commonwealth, an appeal may only be taken from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right; 3) an interlocutory order by permission; or 4) a collateral order.

**Commonwealth v. Parker**, 173 A.3d 294, 296 (Pa. Super. 2017) (quotation marks and citations omitted).

The Commonwealth asserts that the trial court's order quashing the charges is an appealable final order under Pa.R.A.P. 742. **See** Commonwealth's Brief at 1 (citing **Commonwealth v. Karetny**, 880 A.2d 505, 512-13 (Pa. 2005) ("[A]n order quashing a charge is unquestionably

- 6 -

'final' as to that charge because a trial on the remaining charges would permanently preclude trial on the quashed charge.")).

However, in **McClelland II**, after the trial court denied his *habeas* petition, the defendant filed an interlocutory appeal that we permitted because "extraordinary circumstances" existed to justify accepting the appeal. **See McClelland II**, 233 A.3d at 724-25. On appeal to our Supreme Court, the Commonwealth challenged whether interlocutory appellate review was appropriate. The Court, however, declined to consider this challenge, stating that our allowance of the appeal was "beyond the scope of the issue upon which *allocatur* was granted." **Id.** at 732 n.8. In so doing, however, the Court reiterated that "[a]n order denying or granting a writ of *habeas corpus* is interlocutory." **Id.** (citing **Commonwealth v. La Belle**, 612 A.2d 418 (Pa. 1992)).

After **McClelland II**, we quashed two Commonwealth interlocutory appeals involving similar circumstances. In both instances, the panels found it lacked jurisdiction to consider Commonwealth appeals from trial court orders granting *habeas* relief and dismissing all charges without prejudice to charges being refiled. **See Commonwealth v. Hacker**, 253 A.3d 252 (Pa. Super. April 1, 2021) (unpublished memorandum), *reargument denied* (June 8, 2021); **Commonwealth v. Rogers**, 2021 WL 2592241, 1302 MDA 2020 (Pa. Super. June 1, 2021) (unpublished memorandum).

More recently, though, a panel of this Court came to a different conclusion in **Commonwealth v. Merced**, ___ A.3d ___, 2021 WL 4898934 (Pa. Super. October 21, 2021). In that case, the defendant was charged with various sexual offenses against his ex-girlfriend's daughters. At the preliminary hearing, none of the daughters testified, as the Commonwealth relied on the arresting officer's testimony about their statements. Because **Ricker I** was still good law at the time, all charges were held for court. After **McClelland II** was issued, the defendant filed a *habeas* petition in the trial court. At the *habeas* hearing, the Commonwealth supplemented the preliminary hearing record with the daughters' testimony about the abuse. Their testimony, however, varied somewhat from their original statements about digital penetration. Based on this discrepancy, the trial court held that the direct testimony established a *prima facie* case for some charges but not aggravated indecent assault. Rather than proceed with the remaining charges, however, the Commonwealth appealed under Pennsylvania Rule of Appellate Procedure 311(d), certifying that the trial court's order will "terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

While neither party contested jurisdiction, the **Merced** panel addressed whether it had jurisdiction. **Merced**, *supra* at *3. After comprehensively reviewing the history of *habeas corpus* in Pennsylvania, the panel concluded that it was "well established that the Commonwealth may appeal from a trial court's order dismissing a felony charge based on a pretrial petition for Writ

of *Habeas corpus*." ***Id.*** at \*4 (quoting ***Karetny***, ***supra*** at 513).  As a result, the panel held it had jurisdiction over the Commonwealth's appeal.  While acknowledging that this conflicted with the result in ***Hacker*** and ***Rogers***, the panel observed that those were both non-precedential decisions to which it was not bound.  Likewise, the panel acknowledged that its holding also conflicted with statement in ***McClelland II*** that an order denying or granting *habeas* relief is interlocutory.  ***Id.*** at n.7.  However, that statement, the ***Merced*** panel observed, was non-binding *dicta* because the Supreme Court's *allocatur* grant in ***McClelland II*** did not include the appealability of *habeas* orders.  ***Id.***

Like we did in ***Merced***, here we address a Commonwealth appeal of a pretrial order dismissing charges on a *habeas* petition.  While there are differences on the merits, ***Merced*** is a published decision that answers the jurisdictional question in this case.  As we often recognize, a prior published opinion issued by a panel of this Court constitutes binding precedential authority.  ***See Commonwealth v. Beck***, 78 A.3d 656, 659 (Pa. Super. 2013) ("A panel [of this Court] is not empowered to overrule another panel of the Superior Court.") (citation omitted).  This being the case, we have jurisdiction and may address the merits of the Commonwealth's appeal.[3]

_____

[3] The evidentiary sufficiency of the Commonwealth's prima *facie* case for a charged crime is a question of law for which our standard of review is *de novo*
*(Footnote Continued Next Page)*

**IV.**

Before addressing the Commonwealth's contention that it can rely solely on hearsay to establish that the defendant committed the crime as long as it presents some direct evidence as to the commission of the crime, a review of the relevant case law is necessary.

**A.**

Until **Commonwealth ex rel. Buchanan v. Verbonitz**, 581 A.2d 172 (Pa. 1990), it was generally considered that a person could be held for court on charges at the preliminary hearing on hearsay alone. There, the defendant was charged with sexual offenses against a minor. At his preliminary hearing, the only evidence the Commonwealth presented was the hearsay testimony of the investigating police officer, who testified about the victim's description of the assault. In a 5-2 vote, our Supreme Court held that the investigating officer's hearsay testimony about the victim's allegations was insufficient alone to establish a *prima facie* case against the defendant. While the five Justices agreed that the Commonwealth failed to establish a *prima facie* case under fundamental due process under the Pennsylvania and United States

---

and our scope of review is plenary. **See Commonwealth v. Wroten**, 257 A.3d 734, 742 (Pa. Super. 2021) (citation omitted).

Constitutions,[4] they split on whether the defendant had a constitutional right to confrontation at the preliminary hearing.

The lead opinion found that fundamental due process prevented the Commonwealth from relying on hearsay alone to establish a *prima facie* case. In its discussion of the standards for preliminary hearings, the lead opinion believed that the Commonwealth cannot rely on hearsay to establish any of the elements of any of the charged offenses.

> In order to satisfy this burden of establishing a *prima facie* case, the Commonwealth must produce legally competent evidence, ***Commonwealth v. Shain,*** 493 Pa. 360, 426 A.2d 589 (1981), which demonstrates the existence of each of the material elements of the crime charged and legally competent evidence to

_____

[4] The Due Process Clause of the Fourteenth Amendment to the United States Constitution prevents states from depriving "any person of life, liberty, or property, without due process of law ...." U.S. CONST. amend XIV, § 1. Additionally, the Pennsylvania Constitution provides due process protection in Article I, Section 9, which provides:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

PA. CONST. art. I, § 9. These two due process provisions have been treated as largely coextensive. ***See Commonwealth v. Sims***, 919 A.2d 931, 941 n.6 (2007).

> **demonstrate the existence of facts which connect the accused to the crime charged.** *See Commonwealth v. Wojdak*, 502 Pa. 359, 466 A.2d 991 (1983).

*Verbonitz*, 581 A.2d at 174 (emphasis added).

Applying this standard, the lead opinion concluded that the Commonwealth failed to meet its burden, approvingly citing to Justice Flaherty's concurrence in *Unemployment Compensation Board of Review v. Ceja*, 427 A.2d 631 (Pa. 1981), a case evaluating the use of the "legal residuum" rule in administrative hearings that holds that hearsay cannot be used to support a finding unless it is corroborated by direct evidence.[5]

> … As Justice Flaherty stated in his concurring opinion in [*Ceja*, 427 A.2d at 647], "[f]undamental due process requires that no

---

[5] Under 2 Pa.C.S. § 505, "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted." (Formerly, Section 32 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, 71 P.S. 1710:32). The "legal residuum" rule in administrative proceedings, often called the *Walker* rule in Pennsylvania, provides that "*unobjected to* hearsay evidence can be relied on to support a finding if it is corroborated by other competent evidence, while o*bjected to* hearsay evidence can never be relied on to support a finding." *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 (1976). (citations omitted). The alternative is to allow agencies and reviewing courts to exercise discretion in determining in the light of circumstances of each case whether particular evidence is reliable, even though it would be excluded in a jury case. In the exercise of such discretion, agencies and reviewing courts will in many circumstances find that particular hearsay or other so-called incompetent evidence has insufficient reliability. The legal residuum rule prevents agencies from relying only on "incompetent" evidence like hearsay in reaching a decision. This forces agencies to insist on careful presentation and examination of evidence. *See* Schwartz, ADMINISTRATIVE LAW, § 7.4, at 376-77 (1991) (citing 1 Cooper, State Administrative Law 411 (1965)).

adjudication be based solely on hearsay evidence." If more than "rank hearsay" is required in an administrative context, the standard must be higher in a criminal proceeding where a person may be deprived of his liberty. The testimony of a witness as to what a third party told him about an alleged criminal act is clearly inadmissible hearsay, *Commonwealth v. Maybee,* 429 Pa. 222, 239 A.2d 332 (1968), *Commonwealth v. Whitner,* 444 Pa. 556, 281 A.2d 870 (1971) and thus, does not constitute legally competent evidence. In this case the Commonwealth has failed to establish *prima facie* that a crime has been committed and that [the defendant] committed that crime.

*Verbonitz*, 581 A.2d at 174. The lead opinion went on to also find that the defendant's right to confrontation under the Pennsylvania Constitution was violated because he could not cross-examine his accuser. *Id.* at 418-19.

Justice Flaherty, joined by Justice Cappy, concurred on due process grounds. Like the lead opinion, Justice Flaherty cited his concurrence in *Ceja* for the proposition that due process requires that the Commonwealth present something more than mere hearsay at a preliminary hearing.

I deem this to be a requirement of due process. In [*Ceja*], a plurality of this Court referred to "this Commonwealth's long-standing requirement that administrative findings must be supported by some evidence that would be admissible over objection in a court of law." This author expressed the view that "[f]undamental due process requires that no adjudication be based solely on hearsay evidence." [*Ceja*, 427 A.2d at 647]. The reference in *Ceja* was to a final adjudication of property rights, but the principle *a fortiori* applies with equal force in a preliminary hearing-a critical stage of a criminal proceeding in which life, death, liberty, and property are all at issue.

Applying this principle to this case requires the conclusion that the hearsay statement of the police officer was insufficient, *vel non,* to establish a *prima facie* case against appellant. It was a hearsay statement which could not be admitted over objection in a criminal trial and thus, standing alone, it was insufficient to establish a *prima facie* case, which ... must be based on evidence which could

- 13 -

be presented at the trial in court. I therefore concur in the judgment that the Commonwealth's evidence at [the defendant's] preliminary hearing failed to establish a *prima facie* case, and that [the defendant] is entitled to discharge.

*Verbonitz*, 581 A.2d at 175–76 (citation omitted).

Based on this analysis, Justice Flaherty did not believe that the Court had to address the applicability of the rights of confrontation and cross-examination at a preliminary hearing. Instead, he thought the Court need only hold that the Commonwealth cannot rest a *prima facie* case solely on hearsay. *Id.* at 176. Thus, *Verbonitz* did not mean that hearsay evidence was not allowed to bolster non-hearsay evidence, only that a person could not be held for court solely on hearsay evidence.

**B.**

Over 20 years after *Verbonitz*, Rule of Criminal Procedure 542 replaced the former rule governing preliminary hearings. Under the initial 2011 version, subsection (E) provided as follows:

(E) Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish any element of an offense requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

Pa.R.Crim.P. 542(E) (2011 version). The rule's comment explained that the elements listed were not meant to be exclusive:

Subsection (E) was added to the rule in 2011 to clarify that traditionally our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings, especially with regard to the use of hearsay to establish the elements of a *prima facie* case. *See* the Pennsylvania Rules of Evidence

- 14 -

generally, but in particular, Article VIII. Accordingly, hearsay, whether written or oral, may establish the elements enumerated in subsection (E). That enumeration is not comprehensive and hearsay is admissible to establish other matters as well. The presence of witnesses to establish these elements is not required at the preliminary hearing. *See also* Rule 1003 concerning preliminary hearings in Philadelphia Municipal Court.

Pa.R.Crim.P. 542(E), cmt. (2011 version).

In 2013, subsection (E) was amended to its current version to clarify what the comment stated — that the listed elements were not intended to be exclusive.

(E) Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish **any** element of an offense, **including, but not limited to, those** requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

Pa.R.Crim.P. 542(E) (emphasis added to amending language). The comment was also amended to reflect the change but cited **_Verbonitz_**, ostensibly warning of possible tension between the rule and the Supreme Court's decision. The comment currently reads as follows:

Subsection (E) was amended in 2013 to reiterate that traditionally our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings, especially with regard to the use of hearsay to establish the elements of a *prima facie* case. *See* the Pennsylvania Rules of Evidence generally, but in particular, Article VIII. Accordingly, hearsay, whether written or oral, may establish the elements of any offense. The presence of witnesses to establish these elements is not required at the preliminary hearing. **_But compare_ [_Verbonitz_] (plurality) (disapproving reliance on hearsay testimony as the sole basis for establishing a _prima facie_ case)**. *See also* Rule 1003 concerning preliminary hearings in Philadelphia Municipal Court.

Pa.R.Crim.P. 542(E), cmt. (emphasis added). The Commonwealth contends that under this Rule, once it makes out any element of the crime, it can make out other elements of the crime with hearsay.

**C.**

In ***Ricker I***, this Court got its first chance to reconcile the language in subsection (E) with our Supreme Court's decision in ***Verbonitz***. In ***Ricker I***, the defendant shot a state trooper. The trooper survived and gave an audio-recorded statement about the shooting to the lead investigator. At the preliminary hearing, the Commonwealth played the audio recording of the trooper's statement. Additionally, like this case, the investigator also testified about recovering ballistics evidence from the crime scene. The defendant objected to the audio recording on hearsay grounds and requested a continuance to call the trooper as a witness. The district magistrate court overruled the objection, declined the continuance request, and held the defendant for court. The defendant then filed a pretrial writ of *habeas corpus*, arguing that the district magistrate court erred in finding a *prima facie* case based solely on the trooper's audio-recorded statement. After the trial court denied the writ, we permitted the defendant's interlocutory appeal.

On appeal, the ***Ricker I*** panel first agreed with the defendant that hearsay alone was used to prove a prima facie case of attempted murder, aggravated assault against a law enforcement officer, and aggravated assault against the police officer. ***Ricker I***, 120 A.3d at 356. Having settled that

preliminary issue, the panel next considered whether "Rule 542(E) and the use of hearsay evidence alone may establish a *prima facie* case." **Id**. After finding no binding precedent to the contrary, the panel noted that Rule 542(E), by its plain terms, permits hearsay to be considered in determining any material element of the crime. Because hearsay evidence was sufficient to establish one or more elements of the crime, it followed then that hearsay evidence was sufficient "to meet all of the elements." **Id.** at 357. Thus, by the rule's own terms, the panel found that hearsay evidence alone was enough for a *prima facie* case. **Id**.

This conclusion, however, did not resolve the case because the defendant claimed that his confrontation rights were violated under both the United States and Pennsylvania Constitutions. It was in this context that the panel reviewed **Verbonitz** and acknowledged that "a majority of justices agreed that hearsay evidence alone was insufficient to establish a *prima facie* case at a preliminary hearing." **Id**. at 360. Nevertheless, under the panel's reading of **Verbonitz**, the lead opinion based its rationale "on a constitutional confrontation right," while the concurrence based its rationale on due process. **Id**. Thus, the panel found that **Verbonitz** was "not binding and valuable only insofar as its rationale can be found persuasive." **Id**. Ultimately, the **Ricker I** panel, after reviewing "the historical underpinnings of the preliminary hearing, the reasons for the creation of the Pennsylvania and federal confrontation clauses, and the original public meaning of the respective

confrontation clauses," concluded that a defendant does not have a constitutional right to confrontation at a preliminary hearing. *Id.* at 362.[6]

## D.

## 1.

We again addressed this issue in *Commonwealth v. McClelland*, 165 A.3d 19 (Pa. Super. 2017) (*McClelland I*). There, the defendant was charged with committing various sexual offenses against an eight-year-old child. According to the criminal complaint, the state police learned of the abuse from the child's parents. This led to a specialist at a children's advocacy center interviewing the child about the defendant's abuse. At the preliminary hearing, the investigator was the Commonwealth's only witness, as he testified about what the child told the specialist. After all charges were held for court, the defendant filed a *habeas* motion that was denied.

After allowing interlocutory appeal, we affirmed the denial of the motion. Unlike the *Ricker I* panel, which did not need due process because it was not raised, the *McClelland I* panel had to make the threshold determination whether due process protections apply to a preliminary hearing. While the

---

[6] Initially our Supreme Court granted allowance of appeal to determine "a defendant does not have a state or federal constitutional right to confront the witness against him at a preliminary hearing" and whether "a prima facie case may be proven by the Commonwealth through hearsay evidence alone[?]" *Commonwealth v. Ricker*, 135 A.3d 175 (Pa. 2016) (per curiam). After argument, however, the Court dismissed the appeal as improvidently granted. See *Commonwealth v. Ricker*, 170 A.3d 494 (Pa. 2017) (*Ricker II*).

defendant "failed to specify what interest is at stake," the panel read his argument as being that his preliminary hearing was inadequate to vindicate "his rule-based right to confront [the witnesses against him] since the Commonwealth can elect to render it meaningless through hearsay." *Id.* at 29-30.

We rejected this argument, finding that the defendant's interest was not in confronting the witnesses against him but "in probing the strength of the Commonwealth's case for the subsequent trial." *Id.* at 30. This included the lack of prompt complaint, the victim's family staying in contact with the defendant, and other witnesses present at the crime scene failing to come forward. *Id*. Because such matters went to credibility and were irrelevant at a preliminary hearing, we found the reliability of the *prima facie* determination would not have been enhanced by the defendant cross-examining the minor victim. *Id*.

We also found that any error in admitting hearsay at the preliminary hearing would be irrelevant if the defendant were convicted at trial, and if the defendant were acquitted, then the error's impact would be "minimal" because there would be no permanent loss of liberty. In summarizing its conclusion that due process was not violated, we found that the defendant failed to show that he was entitled under due process to anything beyond "adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal," all of which he received. *Id.* Finally, while

acknowledging that requiring an individual to stand trial imposes significant liberty constraints, we noted that the Fourth Amendment and not due process applied to such constraints. *Id.* at 32.

**2.**

In **McClelland II**, our Supreme Court reversed. It began by recognizing that (1) a five-Justice majority in **Verbonitz** agreed that hearsay evidence, without more, cannot establish a *prima face* case at a preliminary hearing, and (2) that a majority also agreed that "fundamental due process requires that no adjudication be based solely on hearsay evidence." **See McClelland II**, 233 A.3d at 721 (citations omitted). It had "little difficulty in stating with certainty that five Justices in **Verbonitz** agreed a *prima facie* case cannot be established by hearsay evidence alone, and the common rationale among those Justices involved due process considerations." *Id.* at 732.

The Court next considered the validity of **Verbonitz** after the promulgation of Rule 542(E), which the **Ricker I** panel construed as allowing the unlimited use of hearsay for establishing "all elements of all offenses." Focusing first on the rule's initial 2011 version, the Court explained:

> …The rule, by its plain language, was of limited scope. It permitted "[h]earsay as provided by law" to be "considered" and offered primarily to establish elements of property offenses. The rule, in part, relieved victims of property offenses from attending an accused's preliminary hearing simply to establish facts about the ownership of, nonpermissive use of, damage to, or value of stolen property. Notably, at that time, the rule was in essential harmony with the **Verbonitz** lead and concurring opinions, which concluded legally competent evidence, and not hearsay alone, was required to establish the elements which must be proven at a

- 20 -

preliminary hearing. Thus, initial promulgation of subsection (E), to an extent, formalized a procedure many preliminary hearing courts were already following — allowing some hearsay to prove some elements when other legally competent, non-hearsay evidence was also presented, in accordance with the conclusion of the five *Verbonitz* justices who opined hearsay evidence alone is not sufficient to establish a *prima facie* case.

*Id.* at 733 (citations omitted).

It then turned to the 2013 amendment to Rule 542(E) and, as the *Ricker I* and *McClelland I* panels implicitly held, the expanded version of the rule supplanted *Verbonitz* to allow "**all** elements of **all** offenses to be stablished at a preliminary hearing solely on the basis of hearsay evidence." *Id.* at 734. (emphasis in original). While recognizing that Rule 542(E) was "not the model of clarity," the Court concluded that Rule 542(E) "does not permit hearsay evidence alone to establish all elements of all crimes for purposes of establishing a *prima facie* case at a defendant's preliminary hearing." *Id.*

In reaching this conclusion, the Court found that the rule's use of the word "any" in providing that hearsay evidence is sufficient to establish any element of the crime was ambiguous. It also recognized that the rule's use of the word "any" was "delimited" by the phrase "[h]earsay as provided by law shall be considered" in the first sentence of Rule 542(E). *Id.* Because some meaning must be ascribed to this phrase, it then examined the competing interpretations, with one of them being that it merely means "as defined by law, *i.e.*, an out-of-court statement presented as evidence of the

truth of the mattered asserted." *Id.* at 735 (citation omitted). On the other hand, our Supreme Court noted the phrase, "as provided by law" could also reasonably be construed as meaning "contingent on" or "subject to," acting as a "bulwark against reading the rule as a sweeping pronouncement permitting hearsay alone to prove all elements of all offenses at a preliminary hearing." *Id.* It observed that this reading was supported by the comparison citation to *Verbonitz* that was added to the rule's comment in 2013. *Id.*

Based on this analysis, the Court found that "the amended rule does not evince an articulated intent to overrule *Verbonitz* or re-affirm it; instead, subsection (E) is intended to allow **some use of hearsay**." *Id.* (emphasis added.) Applying the canon of constitutional avoidance to interpret the rule so as to not violate due process, it went on to state the rule's plain language, "does not state a *prima facie* case may be established solely on the basis of hearsay, despite the Superior Court's contrary interpretation." *Id.*[7]

With that in mind, our Supreme Court held that the Commonwealth violated the defendant's due process rights by relying exclusively on hearsay at the preliminary hearing, stating:

> The primary reason for the preliminary hearing is to protect an
> individual's right against unlawful arrest and detention. The

---

[7] "Under the canon of constitutional avoidance, if a statute is susceptible of two reasonable constructions, one of which would raise constitutional difficulties and the other of which would not, we adopt the latter construction." *Commonwealth v. Herman*, 161 A.3d 194, 212 (Pa. 2017). The doctrine is equally applicable to court rules.

preliminary hearing seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed**, or for a crime with which there is no evidence of his connection**. Our precedents make clear the full panoply of trial rights do not apply at a preliminary hearing, but the hearing is nevertheless a critical stage of the proceedings, and is intended under Rule 542 to be more than a mere formality. Due process clearly attaches, but due process is a flexible concept, incapable of precise definition. Here, at the hearing afforded [the defendant], the Commonwealth relied exclusively and only on evidence that could not be presented at a trial. This is precisely the circumstance and rationale upon which five Justices in *Verbonitz* determined [the defendant's] right to due process was violated. (emphasis added).

*Id.* at 736 (internal citations and quotations omitted) (emphasis added).

Now to the merits of this appeal.

## V.

## A.

While it acknowledges that *McClelland II* held that *Verbonitz* is precedential and held that relying only on hearsay at a preliminary hearing violates a defendant's due process rights, the Commonwealth contends that *McClelland II* does not address the amount and type of hearsay that can make out a *prima facie* case at a preliminary hearing. It argues that Rule 542 expressly permits hearsay to: (1) "be considered by the issuing authority in determining whether a *prima facie* case"; and (2) "be sufficient to establish any element of an offense, including, but not limited to, those requiring proof of the ownership of, non-permitted use of, damage to, or value of property." Pa.R.Crim.P. 542(E).

In this case, unlike in **Verbonitz** and **McClelland II** where no direct evidence was adduced, the Commonwealth contends that because it presented direct non-hearsay evidence at the preliminary hearing establishing that a crime was committed, it can use hearsay evidence that Harris was the person that committed the crime. This is so because the express language of Rule 542(E) permits the use of hearsay evidence at a preliminary hearing to establish some elements, just not all of them.

In addressing the Commonwealth's contention, we first note the general principles of a preliminary hearing. As we have recently explained:

> The preliminary hearing is not a trial and serves the principal function of protecting the accused's right against an unlawful arrest and detention. At a preliminary hearing, the Commonwealth bears the burden of proving the prima *facie* case, which is met when it produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. The evidence supporting a prima *facie* case need not establish the defendant's guilt beyond a reasonable doubt, but must only demonstrate that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to proceed to a jury.

**Commonwealth v. Wroten**, 257 A.3d 734, 742 (Pa. 2021) (internal citations and quotations omitted); **see also** Pa.R.Crim.P. 542(D) ("At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a prima *facie* case that (1) an offense has been committed and (2) the defendant has committed it.").

As these principles show, the Commonwealth must present evidence that, if presented at trial and accepted as true, establishes not only that a

crime has been committed, but also that it was the defendant who committed it. Fundamental due process limits the applicability of Rule 542(E) to the use of other inadmissible hearsay evidence to matters that are not core elements of the crime charged, or matters that are tangential to whether the defendant was the one who committed the crime, such as evidence regarding the value of the property for grading purposes, lab reports or other evidence that does not materially affect the defendant's due process rights. Furthermore, hearsay evidence can be introduced to corroborate direct evidence regarding an element of the crime or crimes charged.

**B.**

We also reject the Commonwealth's argument that Rule 542(E) permits it to establish any element of the charged offenses with hearsay once it adduces non-hearsay evidence as to any element of the crime. The Commonwealth simply asserts that subsection (E) expressly permits hearsay to establish "any element" of a crime to make out a *prima facie* case, essentially the same argument presented in **McClelland II**, only now the Commonwealth is arguing that "any" in the phrase "shall be sufficient to establish **any** element of an offense means" means "at least one" rather than "all."

Initially, we note that the Commonwealth's position that due process does not require direct evidence that the defendant was the person who committed the crime as long as there was direct evidence that a crime had

been committed is somewhat anomalous, given that it was the defendant that was going to be bound for trial and subject to pre-trial detention.

Moreover, this position ignores that **McClelland II** found that expanded Rule 542(E) does not allow hearsay evidence alone to establish all elements of all crimes just because "any" was not limited in the rule. **Id.** at 734. In so finding, the Supreme Court held that there were reasonable alternative interpretations of the use of "any" in subsection (E) of the rule, especially since that word was "delimited by the phrase '[h]earsay as provided by law shall be considered' contained in the first sentence of subsection (E)." **Id.** It found that phrase ambiguous, as it could interpreted to mean either (1) "hearsay as defined by law, i.e., an out-of-court statement presented as evidence of the truth of the matter asserted"; or (2) a limitation on the use of hearsay meaning "'contingent on' or 'subject to' law[.]" **Id.** at 735. After making this analysis, the only thing the **McClelland II** Court could say for sure about Rule 542(E) was that it is "intended to allow some use of hearsay." **Id.**

Following the **McClelland II** Court's textual analysis of the rule, we hold that nothing in Rule 542(E) prevents the application of **Verbonitz** requiring that all the material elements of the criminal offense need to be proved at a preliminary hearing by non-hearsay evidence. While a preliminary hearing is not a trial and due process is a flexible concept, the hearing is still a critical stage in the proceedings that "is intended under Rule 542 to be more than a

mere formality." ***McClelland II***, 233 A.3d at 736. The preliminary hearing "seeks to prevent a person from being imprisoned or required to enter bail for a crime … **for a crime with which there is no evidence of [the defendant's] connection**." ***Id.*** (citation omitted) (emphasis added). To interpret it any other way, the rule would violate a defendant's constitutional rights to due process.

What Rule 542(E) does permit is that otherwise inadmissible hearsay evidence can be admitted that does not materially go to whether a crime has been committed or that the person committed the crime. Such evidence regarding the value of the property for grading purposes, lab reports and such can be introduced because they do not materially affect the defendant's due process rights. Furthermore, hearsay evidence can be introduced to corroborate direct evidence regarding an element of the crime or crimes charged.

In this case, no direct evidence was offered that Harris committed the crimes charged. Despite this, the Commonwealth was able to keep Harris in pretrial incarceration for nearly a year-and-a-half, even though, based on our review of the record, it has never been able to proceed to trial because it would not be able to present the live in-person testimony of Stewart. While mindful of the witness intimidation concerns raised by the Commonwealth, those concerns cannot outweigh the defendant's due process right at a preliminary hearing to have the Commonwealth present legally competent

evidence that a criminal offense was committed and that the defendant, in fact, committed that offense.

## VI.

We conclude that the Supreme Court's holdings in **Verbonitz** and **McClelland** precludes the Commonwealth from relying on hearsay alone at a preliminary hearing to establish a *prima facie* case that the defendant committed a crime. By failing to do that in this case, the Commonwealth violated Harris's fundamental due process rights.[8] Accordingly, we conclude that the trial court did not err in granting the motion to quash all charges against Harris.

Order affirmed. Harris discharged without prejudice.[9]

---

[8] Because our conclusion is based on fundamental due process under **Verbonitz** and **McClelland II**, we need not address whether the Commonwealth also violated Harris's constitutional right to confrontation, which he attempts to argue at the end of his brief. **See** Harris's Brief at 21-23.

[9] "Dismissal of charges and discharge of the accused for failure to establish a *prima facie* case at the preliminary hearing ... does not implicate double jeopardy concerns." **McClelland II**, 233 A.3d at 736 n.11 (citations omitted). The Commonwealth may refile the charges against Harris and proceed with a new preliminary hearing, subject to the limitations discussed in this opinion.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 1/3/2022*