J-S43039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RYAN JAMES ALLIS | : | No. 247 MDA 2023 |

Appeal from the Order Entered January 17, 2023
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000589-2022

BEFORE: McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: JUNE 14, 2024**

The Commonwealth appeals from the order of the Court of Common Pleas of Bradford County ("trial court") granting the petition for writ of *habeas corpus* filed by Appellee, Ryan James Allis, and dismissing the charges against Appellee. We reverse and remand for further proceedings.

On August 15, 2022, the Commonwealth charged Appellee with three counts each of possession of a controlled substance, possession of a controlled substance with intent to deliver, and possession of drug paraphernalia and two counts of criminal use of a communication facility[1] related to three incidents where Appellee allegedly sold methamphetamine to a confidential informant ("CI") in December 2021 and January 2022. At the October 5, 2022

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(16), (a)(30), and (a)(32), and 18 Pa.C.S. § 7512(a), respectively.

preliminary hearing in this matter, the Commonwealth presented the testimony of Bradford County Detective Michael Lamanna, who had training with drug investigations, including the use of CIs. N.T., 10/5/22, at 2-3.

Detective Lamanna testified that, on an unspecified date in December 2021, he met with a CI with the goal of conducting a controlled buy of drugs from Appellee at Apartment 5 of the 110 Washington Street apartment building in Towanda Borough. *Id.* at 3, 6. According to Detective Lamanna, the CI was searched for contraband before entering the apartment and was then provided with pre-recorded buy money. *Id.* at 4-5. The CI was transported to an area close to the target location, and Detective Lamanna watched the CI enter Apartment 5. *Id.* at 6, 15. Upon return to the vehicle, the CI handed Detective Lamanna a quantity of suspected methamphetamine; the CI was later searched and determined to not be in possession of the pre-recorded buy money. *Id.* at 6-7. The CI informed Detective Lamanna that the methamphetamine had been purchased from Appellee. *Id.* at 8.

Detective Lamanna testified that a second controlled buy occurred later in December 2021 after Appellee informed the CI that he had methamphetamine for sale. *Id.* at 8-9. Detective Lamanna listened to a telephone call between Appellee and the CI and viewed Facebook Messenger communications between the two, confirming that Appellee was the individual with whom the CI was communicating to arrange the drug sale. *Id.* at 8, 13, 17. Prior to the controlled buy, the CI was searched and provided with pre-recorded buy money. *Id.* at 10. Upon arrival at the pre-arranged meetup

location on Pine Street in Towanda Borough, the CI exited Detective Lamanna's vehicle and entered a black SUV. ***Id.*** at 9, 17. A short time later, the CI returned to the detective's vehicle without the buy money but with a substance believed to be methamphetamine; the CI indicated that the methamphetamine was supplied by Appellee. ***Id.*** at 10.

A third controlled buy took place in January 2022. This transaction was arranged by Appellee and the CI on Facebook Messenger; Detective Lamanna viewed the messages at issue and saved screenshots of them for trial. ***Id.*** at 11, 13, 20. The CI was searched beforehand and provided with pre-recorded buy money, and Detective Lamanna drove the CI to the arranged meetup location on Washington Street near the apartment building where the first buy occurred. ***Id.*** at 11, 19. The CI exited Detective Lamanna's vehicle and entered a gray pickup truck. ***Id.*** After returning to the detective's vehicle, the CI handed over a quantity of suspected methamphetamine, indicating that Appellee had provided it. ***Id.*** at 12. The drugs purchased at each of the three buys were sent to a laboratory for testing, but the results had not been received as of the date of the preliminary hearing. ***Id.*** at 12.

The CI did not testify at the preliminary hearing. At the conclusion of the preliminary hearing, the magisterial district judge bound the charges over for trial. ***Id.*** at 25.[2]

---

[2] The information filed in this matter subsequent to the preliminary hearing conforms to the charges in the criminal complaint, except that Appellee was
*(Footnote Continued Next Page)*

Appellee filed a petition for writ of *habeas corpus* in the trial court asserting that the Commonwealth failed to establish a *prima facie* case of the identity of the individual who sold methamphetamine to the CI when it relied solely on the hearsay testimony of Detective Lamanna. The Commonwealth filed a responsive brief, in which it argued that it had presented sufficient evidence that the crimes were committed and that Appellee had committed them. The Commonwealth asserted that it held a well-recognized qualified privilege to withhold the identity of its confidential source and that it had no duty to disclose the identity in this case where the defendant had not even requested to reveal the CI's identity. The Commonwealth further asserted that, if the trial court determined that the CI's identity should be disclosed, the Commonwealth would make the CI available to testify at a hearing on the *habeas* petition.

The trial court granted the *habeas* petition in a January 17, 2023 order. In an accompanying opinion, the trial court relied on **Commonwealth v. Harris**, 269 A.3d 534 (Pa. Super. 2022) ("**Harris I**"), **aff'd** ____ A.3d ____, 2024 WL 2120894 (Pa., filed May 13, 2024), in which this Court held that, pursuant to Rule of Criminal Procedure 542(E), the Commonwealth is precluded "from relying on hearsay alone at a preliminary hearing to establish a *prima facie* case that the defendant committed a crime." **Id.** at 548. In

_____

only charged with two counts of possession of drug paraphernalia in the information. Information, 10/26/22.

rejecting the Commonwealth's argument that it was not required to divulge the CI's identity in order to prevail at the preliminary hearing, the trial court stated that "[a]lthough the Commonwealth has a qualified privilege to withhold the identity of a confidential source, said privilege does not extend to not presenting non-hearsay evidence in support of material elements of a crime at a preliminary hearing." Trial Court Opinion, 1/17/23, at 8.

The Commonwealth then filed this timely appeal,[3] in which it raises the following two issues:

A. Did the Suppression Court err in granting the Writ of Habeas Corpus on the grounds/reasoning of **Harris**/**McClelland**?[4]

B. Did the Suppression Court err in finding that the Commonwealth did not present a *prima facie* case at the preliminary hearing?

Commonwealth Brief at 3 (lower court answers and suggested answers omitted).

"[A]n appellate court will review a grant or denial of a petition for writ of *habeas corpus* for abuse of discretion, but for questions of law, our standard of review is *de novo*, and our scope of review is plenary." **Commonwealth**

---

[3] Although the charges were dismissed by the trial court without prejudice, we nevertheless have jurisdiction over this appeal. **See Harris I**, 269 A.3d at 538-39 (citing **Commonwealth v. Merced**, 265 A.3d 786, 790-91 (Pa. Super. 2021)).

[4] **See Commonwealth v. McClelland**, 233 A.3d 717 (Pa. 2020). In **McClelland**, our Supreme Court held that, under Pa.R.Crim.P. 542(E), the Commonwealth may not rely exclusively on hearsay evidence to establish a *prima facie* case against a defendant at the preliminary hearing. **Id.** at 734-36.

***v. Harris***, \_\_\_ A.3d \_\_\_, 2024 WL 2120894, at \*5 (Pa., filed May 13, 2024) ("***Harris II***"). Here, we are presented with a question of law regarding the evidentiary sufficiency of the Commonwealth's *prima facie* case. ***Commonwealth v. Sutton***, \_\_\_ A.3d \_\_\_, 2024 WL 1163627, at \*2 (Pa. Super., filed March 19, 2024). "We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth." ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1111 (Pa. Super. 2016) (*en banc*).

"At a preliminary hearing, the Commonwealth bears the burden of proving the *prima facie* case, which is met when it produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." ***Sutton***, 2024 WL 1163627, at \*3 (quoting ***Commonwealth v. Wroten***, 257 A.3d 734, 742 (Pa. Super. 2021)); ***see also*** Pa.R.Crim.P. 542(D) ("At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a prima facie case that (1) an offense has been committed and (2) the defendant has committed it."). "The evidence supporting a *prima facie* case need not establish the defendant's guilt beyond a reasonable doubt, but must only demonstrate that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to proceed to a jury." ***Sutton***, 2024 WL 1163627, at \*3 (quoting ***Wroten***, 257 A.3d at 742). Under Rule 542(E),

Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish any element of an offense, including, but not limited to, those requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

Pa.R.Crim.P. 542(E).[5]

In its first issue, the Commonwealth argues that the trial court erred in dismissing the charges against Appellee in the "unique situation" here where it relied on the hearsay testimony of a CI at the preliminary hearing. Commonwealth Brief at 11. The Commonwealth states that it enjoys the qualified privilege to protect the CI, whose identity is known only to law enforcement at this time. While conceding that the privilege is not absolute, the Commonwealth asserts that it exists until the defendant makes a motion to disclose and prevails on that motion; here, Appellee has not even made such a request.[6] The Commonwealth notes the policy rationale underlying the

---

[5] To the extent Rule 542(E) uses the term hearsay, it should be understood as referring only to inadmissible hearsay, *i.e.* an out-of-court statement offered for the truth of the matter asserted that does not fall under a hearsay exception. **See Harris II**, 2024 WL 2120894, at \*6 n.8. Hearsay, as used in this memorandum, also refers only to inadmissible hearsay.

[6] In order to overcome the qualified privilege, "a defendant must first establish, pursuant to [Pa.R.Crim.P.] 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable." **Commonwealth v. Ellison**, 213 A.3d 312, 316 (Pa. Super. 2019) (citation omitted). "Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth." **Id.** (citation omitted).

qualified privilege and states that upholding the trial court's ruling here would "resonate throughout" the law enforcement community and "the frequency and willingness of CIs to work with law enforcement would" be greatly diminished. **Id.** at 13.

The Commonwealth distinguishes **Harris I** and the cases upon which it relies, including **McClelland**, as they involve the interpretation of 2013 amendments to Rule 542, **see Harris I**, 269 A.3d at 542, and did not address the qualified privilege that long predated the amendments under review in those cases. The Commonwealth contrasts **Harris I**, which involved the testimony of a shooting victim who failed to appear at two preliminary hearing listings and may never appear at trial, **id.** at 537, from the present case, where the Commonwealth avers that it remains in contact with the CI and has every intention of calling that individual to testify at trial.

This Court recently addressed this precise issue, on very similar facts, in **Sutton**. In that case, a detective testified at the preliminary hearing that, on two occasions, he verified that there were no drugs or money on a CI's person, supplied the CI with pre-recorded buy money, observed the CI enter and exit Sutton's residence, and the CI then handed over suspected methamphetamine with no other contraband or money found on their person. 2024 WL 1163627, at *1. The detective then repeated the CI's out-of-court statement to him that Sutton was the individual who sold the methamphetamine. **Id.** After the charges were bound over, the trial court

granted Sutton's *habeas* petition and dismissed the charges pursuant to **Harris I**. **Id.** at *2.

We reversed, distinguishing **Harris I** on the basis that it did not involve the use of a CI and holding that our earlier decision "does not vitiate jurisprudence that has promoted an accountable, prescribed system recognizing a qualified privilege of keeping informants' identities confidential and permitting use of their statements to law enforcement at preliminary hearings." **Id.** at *4. We stated that **Harris I** does not represent "a sweeping, policy-changing holding that would undo" the qualified privilege at the preliminary hearing stage of the proceedings, recognizing that "such a result would hamper the effects of law enforcement to enforce the laws against the illegal use of controlled substances." **Id.** at *5-6.

We concluded in **Sutton** that the trial court erred by granting the *habeas* petition, a ruling that effectively required the Commonwealth to disclose the CI's identity at the preliminary hearing, particularly where "the Commonwealth certified with the trial court that the CI will be produced at trial" and Sutton "had not established at the preliminary hearing that the qualified privilege rubric required disclosure" of the CI's identity. **Id.** at *4; **see also id.** at *6-7. We additionally noted that the Commonwealth had established a "connection" between Sutton and the controlled buys where the detective testified at the preliminary hearing that he had witnessed the CI enter Sutton's residence possessing only pre-recorded buy money and exit possessing only methamphetamine. **Id.** at *6.

Subsequent to our decision in **Sutton** and the briefing of this appeal, our Supreme Court issued its decision affirming **Harris I**. The Court held in **Harris II** that,

> based on the plain language of Rule 542, [] inadmissible hearsay alone may not be used to prove a *prima facie* case as to the defendant's identity. This means the Commonwealth at a preliminary hearing is required to produce some non-hearsay or admissible hearsay evidence to sustain its *prima facie* burden as to the defendant's identity.

**Harris II**, 2024 WL 2120894, at *8. Like this Court's decision, **Harris II** did not address our qualified privilege jurisprudence. Nor does **Harris II** represent "a sweeping, policy-changing holding that would undo" the qualified privilege, **Sutton**, 2024 WL 1163627, at *6, as our Supreme Court's decision was confined to a textual analysis of the interplay between Rule 542(D) and (E).[7] Therefore, we conclude that **Harris II** does not impair our holding in **Sutton** providing that the Commonwealth is permitted to rely on the out-of-court statements of a CI as related to a law enforcement officer.

Accordingly, pursuant to **Sutton**, we conclude that the trial court erred in determining that the Commonwealth did not present a *prima face* case merely because it relied on hearsay testimony of Detective Lamanna regarding Appellee's involvement in the delivery of methamphetamine. The Commonwealth produced other, non-hearsay evidence at the preliminary

---

[7] **Harris II** was a divided decision, and the lead opinion only carried a majority to the extent it was based upon "an examination of the plain text of Rule 542" and not to the extent it "justifie[d] its conclusion for reasons other than the text of Rule 542." 2024 WL 2120894, at *8 (Donohue, J., concurring).

hearing, including Detective Lamanna's testimony that he searched the CI before and after each of the three controlled buys and found that the CI had obtained methamphetamine on each occasion. Furthermore, Detective Lamanna provided non-hearsay testimony establishing Appellee as the perpetrator of the crimes, including the detective's listening in on telephone conversations and reading messages between Appellee and the CI in which Appellee arranged the sale of methamphetamine to the CI.[8] *Cf. Harris II*, 2024 WL 2120894, at *8 (providing that the Commonwealth may not rely on "inadmissible hearsay alone . . . to prove a *prima facie* case as to the defendant's identity"). Finally, as in *Sutton*, the Commonwealth states that it will produce the CI at trial.

Therefore, viewing the evidence in the light most favorable to the Commonwealth, *see Dantzler*, 135 A.3d at 1111, we conclude that the evidence was sufficient to establish a *prima facie* case that Appellee committed the charged offenses.[9] *See Sutton*, 2024 WL 1163627, at *6-7;

_____

[8] Detective Lamanna's testimony regarding Appellee's out-of-court statements to the CI fell within the hearsay exception for a statement of an opposing party. *See* Pa.R.E. 803(25)(A); *see also Commonwealth v. Edwards*, 903 A.2d 1139, 1157-58 (Pa. 2006).

[9] Because Appellee only challenged the issue of whether the Commonwealth's proof was sufficient to establish his identity as the individual who committed the crimes in his *habeas* petition, we need not address whether the Commonwealth presented sufficient evidence to establish each of the elements of the three charged crimes. *See Harris II*, 2024 WL 2120894, at *5-6 (observing that Rule 542(D) places on the Commonwealth "dual" and "independent" burden at a preliminary hearing to "'prove a *prima facie* case'
*(Footnote Continued Next Page)*

*Commonwealth v. Strope*, No. 249 MDA 2023, 2024 WL 1715348, at *3 (Pa. Super., filed April 22, 2024) (holding, under **Sutton**, that trial court erred when ruling that Commonwealth had failed to establish a *prima facie* case that Strope committed controlled substance offenses where Commonwealth relied on detective's hearsay testimony repeating CI's statement that Strope sold drugs to CI in addition to non-hearsay evidence establishing Strope's identity as the wrongdoer and Commonwealth represented that CI would testify at trial) (non-precedential decision cited for its persuasive value, **see** Pa.R.A.P. 126(b)).

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/14/2024

_____

both with respect to the elements of the crimes **and** the defendant's identity") (quoting Pa.R.Crim.P. 542(D); emphasis in original).