# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

## TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 31 EAP 2022 |
| | : | |
| Appellant | : | Appeal from the Judgment of |
| | : | Superior Court entered on January |
| | : | 3, 2022 at No. 1981 EDA 2020, |
| v. | : | affirming the Order entered |
| | : | September 16, 2020 in the Court of |
| | : | Common Pleas, Philadelphia |
| RONALD HARRIS, | : | County, Criminal Division at No. CP- |
| | : | 51-CR-0005166-2019. |
| Appellee | : | |
| | : | ARGUED:  September 12, 2023 |

*Justice Dougherty delivers the Opinion of the Court with respect to Parts I-III, and announces the Judgment of the Court.  Justice Wecht joins the opinion in full.  Justices Donohue and Brobson join the opinion with respect to Parts I-III, and join the plain-text analysis in Part IV.*

## OPINION

**JUSTICE DOUGHERTY**                                    **DECIDED:  May 13, 2024**

This Court in recent years has sought to clarify when the Commonwealth may properly use hearsay evidence to establish a *prima facie* case at a preliminary hearing. *See Commonwealth v. McClelland*, 233 A.3d 717 (Pa. 2020); *Commonwealth v. Ricker*, 135 A.3d 175 (Pa. 2016) (*per curiam*), *appeal dismissed as improvidently granted*, 170 A.3d 494 (Pa. 2017) (*per curiam*).  In this appeal by allowance, we consider another question in this field: whether Pennsylvania Rule of Criminal Procedure 542(E) permits the use of hearsay alone to prove the defendant's identity.  After careful review, we hold the plain text of the rule does not permit the use of hearsay for this purpose.

# I.  Legal Background

Before recounting the facts, a brief review of the law is helpful.  Rule 542, titled "Preliminary Hearing; Continuances," along with Pa.R.Crim.P. 543, titled "Disposition of Case at Preliminary Hearing," govern preliminary hearings in this Commonwealth.[1]  Rule 542 provides in pertinent part:

(A) The attorney for the Commonwealth may appear at a preliminary hearing and:

    (1) assume charge of the prosecution; and

    (2) recommend to the issuing authority that the defendant be discharged or bound over to court according to law.

. . . .

(D) At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it.

(E) Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish any element of an offense, including, but not limited to, those requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

Pa.R.Crim.P. 542.  Moreover, Rule 543 explains: "If the issuing authority finds that the Commonwealth has established a *prima facie* case that an offense has been committed and the defendant has committed it, the issuing authority shall hold the defendant for court on the offense(s) on which the Commonwealth established a *prima facie* case."  Pa.R.Crim.P. 543(B).  Alternatively, "[i]f there is no offense for which a *prima facie* case has been established, the issuing authority shall discharge the defendant."  *Id.*  These

---

[1] There is a counterpart to Rule 542 that applies to preliminary hearings in Philadelphia Municipal Court.  *See* Pa.R.Crim.P. 1003 ("Procedure in Non-Summary Municipal Court Cases").  Moving forward, we refer only to Rule 542 since the text of the two provisions is essentially identical with respect to the hearsay issue presently before us.  *Compare* Pa.R.Crim.P. 542(E) *with* Pa.R.Crim.P. 1003(E)(2).

rules reflect a preliminary hearing's "principal function": "to protect an individual's right against unlawful detention." *Commonwealth v. Mullen*, 333 A.2d 755, 757 (Pa. 1975).

Our focus in this appeal is on Pa.R.Crim.P. 542 — more specifically, subsections (D) and (E). These subsections and their associated comments were promulgated by this Court on January 27, 2011. It has been observed that the changes were "publicly premised on an effort, spearheaded by several former Justices, to address criticisms of the Philadelphia criminal court system, including those about high dismissal rates due to the absence of fact witnesses at preliminary hearings." *Ricker*, 170 A.3d at 507 n.20 (Saylor, C.J., concurring); *see McClelland*, 233 A.3d at 733 (observing paragraph (E)'s initial purpose was to "relieve[ ] victims of property offenses from attending an accused's preliminary hearing simply to establish facts about the ownership of, nonpermissive use of, damage to, or value of stolen property"). Presumably for similar reasons, on April 25, 2013, the Court amended subsection (E) and its comment to their present form. The rule now states in relevant part: "Hearsay evidence shall be sufficient to establish any element of an offense**, including, but not limited to, those** requiring proof of the ownership of, non-permitted use of, damage to, or value of property." Pa.R.Crim.P. 542(E) (emphasis added to show amended language).

Not long after the 2013 amendment to Rule 542(E), questions arose regarding its breadth and impact. We attempted to resolve one of those issues — whether "a *prima facie* case may be proven by the Commonwealth through hearsay evidence alone" — in *Ricker*, 135 A.3d 175 (Pa. 2016) (*per curiam*), but we ultimately dismissed that appeal as improvidently granted. *See Ricker*, 170 A.3d 494 (Pa. 2017) (*per curiam*). Then, a few years later, we granted review in *McClelland*.

Our task in *McClelland* was twofold. First, we had to determine whether the Superior Court "failed to properly apply and follow the legal precedent set forth" by

*Commonwealth ex rel. Buchanan v. Verbonitz*, 581 A.2d 172 (Pa. 1990) (plurality). *Commonwealth v. McClelland*, 179 A.3d 2, 3 (Pa. 2018) (*per curiam*). Significantly, *Verbonitz* presented the same issue we hoped to settle in *Ricker* before dismissing that case as improvidently granted — that is, whether the use of hearsay evidence alone "is sufficient to establish a *prima facie* case." *Verbonitz*, 581 A.2d at 173. In *McClelland*, we clarified that the *Verbonitz* Court answered this question in the negative decades before *Ricker*. *See McClelland*, 233 A.3d at 733 ("it is clear that a five-member majority of the Court held hearsay alone is insufficient to establish a *prima facie* case at a preliminary hearing because to do so violates principles of fundamental due process").

But we did not stop there. We proceeded in *McClelland* to consider whether Rule 542(E), as adopted in 2011 and expanded in 2013, "supplant[ed] *Verbonitz*" by permitting "**all** elements of **all** offenses to be established at a preliminary hearing solely on the basis of hearsay evidence." *Id.* at 734 (emphasis in original). We held it did not. *See, e.g.*, *id.* ("We determine Rule 542(E), though not the model of clarity, does not permit hearsay evidence alone to establish all elements of all crimes for purposes of establishing a *prima facie* case at a defendant's preliminary hearing."); *id.* at 735 ("As the foregoing analysis reveals, the amended rule does not evince an articulated intent to overrule *Verbonitz*[.]").

## II. Factual Background

Having explained this legal context, we now turn to the facts of this case as presented at appellee's preliminary hearing. Around 7:50 p.m. on March 23, 2017, Philadelphia Police Officer Ryan Waltman was on duty when he received a radio dispatch for a male shot on the street. Officer Waltman met the victim, Nishied Stewart, at a home located two to three blocks from the corner of North 33rd Street and West Allegheny Avenue, where the shooting occurred. *See* N.T. Preliminary Hearing, 7/19/19, at 5-6, 21. Officer Waltman noticed the victim was bleeding from gunshot wounds to his right wrist

and left thigh. The officer accompanied the victim to the emergency room within "less than ten minutes[.]" *Id.* at 7. At the hospital, the victim, who was "scared and . . . in pain[,]" told Officer Waltman he had been shot and supplied information on three males involved. *Id.* at 6-8.

Detective John Drudin arrived at the hospital around 9:10 p.m. The victim then provided "nickname[s], physical description[s,] and some biographical information" for the two shooters, plus an address. *Id.* at 12, 20.[2] Detective Drudin left the hospital after speaking with the victim and went to the scene. There he observed five fired cartridge casings from a 9-millimeter firearm. Using police databases and the information provided by the victim, Detective Drudin developed two suspects: appellee and his brother, Rasheed Harris. *See id.* at 13, 19-20. When the detective returned to the hospital the next day, the victim "identified Rasheed and [appellee]" as his shooters from photographs, which the victim signed. *Id.* at 14. The victim also provided a written statement in which he asserted he saw "Sheed and Ron walking down the block. They said, did you steal my shit[?] They both started firing guns at me. I heard eight shots." *Id.* at 27.

The Commonwealth charged appellee with eleven crimes, including attempted murder, aggravated assault, and weapons offenses. The victim did not appear for the first two scheduled preliminary hearings. When he failed to show for a third time, the Commonwealth proceeded with the testimony of Officer Waltman and Detective Drudin. As recounted above, Officer Waltman provided testimony regarding his response to the police dispatch and his firsthand account of the victim's injuries. For his part, Detective Drudin described the ballistics evidence he observed at the scene of the shooting and relayed portions of the victim's hospital statement and identification of appellee as one of

---

[2] The victim also implicated a third person named "Kevin" who, he claimed, "set him up." N.T. Preliminary Hearing, 7/19/19, at 26.

his shooters. Appellee's counsel repeatedly objected to any mention of the victim's out-of-court statements, but the trial court overruled them all. *See id.* at 6-8, 11, 29. At the end of the hearing, the Commonwealth urged the preliminary hearing judge to hold appellee for court on all charges. It explained that, under *Ricker*, which was still good law at that time, "hearsay alone can establish all of the elements of the charges." *Id.* at 30. The judge agreed and bound all charges over for trial. *See id.* at 32 ("[T]his court finds a *prima facie* case has been made out against you on all charges.").[3]

On August 1, 2019, appellee filed a counseled "Motion to Quash Return of Transcript and/or Petition for Writ of Habeas Corpus."[4] In support of his request that the charges against him be dropped and he be discharged, appellee argued the "admissible evidence did not make out a *prima facie* case" against him since it "did not establish probable cause to believe that [**he**] committed a crime." Motion to Quash, 8/1/19, at ¶¶3-4 (emphasis added). This was so, he alleged, because the Commonwealth's *prima facie* case relating to his identity was not "based on legally competent evidence that [he] committed the crimes" but, rather, "was established solely through hearsay." *Id.* at 3 (unpaginated) ¶¶5-6; *see id.* at ¶6 ("Hearsay is not 'legally competent evidence' unless it falls within one of the recognized exceptions to the hearsay rule."). Thus, appellee claimed his continued detainment violated his right to be free from an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, §8 of the Pennsylvania Constitution. *See id.* at ¶4.

---

[3] The Commonwealth withdrew a charge of intimidation under 18 Pa.C.S. §4952(a). *See* N.T. Preliminary Hearing, 7/19/19, at 33-34.

[4] A motion to quash of this nature is "the equivalent in Philadelphia practice of a pre-trial writ of *habeas corpus*." *Commonwealth v. Dantzler*, 135 A.3d 1109, 1111 (Pa. Super. 2016) (*en banc*).

On December 13, 2019, the Honorable Mia Roberts Perez granted appellee's motion to quash as to the attempted murder charge but denied the motion with respect to the remaining charges. This Court decided *McClelland* a few months later, and on that day, appellee filed a motion to reconsider his motion to quash. Judge Perez held a hearing on the motion on September 16, 2020. After the victim failed to appear for a fourth time, *see* N.T. Hearing, 9/16/20, at 3 (prosecutor explaining detectives "were not able to locate" the victim despite visiting three addresses), Judge Perez quashed all outstanding charges. She agreed with appellee there was "no non-hearsay evidence" establishing an "actual connection between him and the crime that occurred." *Id.* at 6; *see* Trial Court Op., 12/28/20, at 7 (finding "no admissible evidence here which connects [appellee] to the crimes for which he was charged"; the only evidence to that effect "came from the out of court, oral and written statements of the [victim], none of which were admitted as substantive evidence"). That fact, in Judge Perez's view, "forced [her] under *McClelland* to grant the motion to quash on all charges." N.T. Hearing, 9/16/20, at 9.

The Commonwealth appealed to the Superior Court, which affirmed. Purporting to follow *McClelland*'s "textual analysis of" Rule 542(E), a three-judge panel held in a published opinion that all "material elements of [a] criminal offense need to be proved at a preliminary hearing by non-hearsay evidence" to avoid "violat[ing] a defendant's constitutional rights to due process." *Commonwealth v. Harris*, 269 A.3d 534, 547-48 (Pa. Super. 2022). The panel did not describe what it considered to be a "material" element of a crime, and elsewhere in its opinion it used slightly different (but similarly undefined) terms. *See id.* at 547 (referencing "core elements" and "tangential" issues). At the same time, the panel noted evidence regarding the value of property for grading purposes and lab reports are immaterial matters. *See id.* As well, it explained "hearsay evidence can be introduced to corroborate direct evidence regarding an element of the

crime or crimes charged." *Id.* Most relevant for our purposes, the panel concluded our decisions "in *Verbonitz* and *McClelland* preclude[ ] the Commonwealth from relying on hearsay alone at a preliminary hearing to establish a *prima* facie case that the defendant committed a crime." *Id.* at 548. "To interpret [Rule 542] any other way," said the panel, "would violate a defendant's constitutional rights to due process." *Id.* And since "no direct evidence was offered that [appellee] committed the crimes charged," the panel concluded "the Commonwealth violated [his] fundamental due process rights." *Id.* The Superior Court therefore affirmed the order granting the motion to quash all charges.[5]

At the Commonwealth's request, we granted allowance of appeal to consider the following rephrased question:

> Whether the Commonwealth, based on constitutional or non-constitutional principles, is prohibited from proceeding to trial following a preliminary hearing where it presented non-hearsay evidence establishing elements of the crimes charged and established the defendant's identity through hearsay evidence from officers who personally interviewed the shooting victim in the immediate aftermath of the crime and to whom the victim identified his shooters by name and in the photographs.

*Commonwealth v. Harris*, 285 A.3d 883 (Pa. 2022) (*per curiam*).

### III. Arguments

The Commonwealth first contends "*McClelland* does not mandate the Superior Court's sweeping ruling." Commonwealth's Brief at 6. According to the Commonwealth, "[w]hile *McClelland* clarified some of the questions that followed the *Verbonitz* plurality decision and the promulgation and amendment of Rule 542(E), its holding was limited." *Id.* at 13. More to the point, the Commonwealth argues the "only limit this Court has recognized to protect the defendant's due process rights is that the Commonwealth may not establish **every** element of **every** offense with hearsay alone." *Id.* at 24 (emphasis in

---

[5] Given its holding, the panel did "not address whether the Commonwealth also violated [appellee]'s constitutional right to confrontation[.]" *Harris*, 269 A.3d at 548 n.8. We likewise do not reach the issue.

original). But the Commonwealth stresses that, in this case, it did not rely exclusively on hearsay; it "presented non-hearsay evidence that a shooting occurred, and relied only partially on hearsay to establish some elements of the" crimes charged. *Id.* at 27. It submits "that difference demands a different analysis." *Id.*; *see id.* at 29 ("*McClelland* does not control the result where, as here, the Commonwealth also presents non-hearsay evidence.").

The Commonwealth additionally takes issue with the panel's interpretation of Rule 542. It faults the panel for not defining "core" or "material" elements of a crime or differentiating them from "non-core," "immaterial," or "tangential" matters — terms that are all absent from the rule. As the Commonwealth sees it, "this novel formulation" is "unworkably vague" and "fundamentally inconsistent with the preliminary hearing judge's central task: to decide whether the Commonwealth has presented a *prima facie* case as to every element of a charged crime to allow that charge to be held for trial." *Id.* at 36 (emphasis omitted). It explains that "**[e]very** statutory element is by definition 'core,' since a failure to establish **any** element renders the Commonwealth's proof inadequate." *Id.* (emphasis in original); *see id.* at 35 (since credibility and weight are irrelevant at preliminary hearings, reasoning "there would simply be no reason for the Commonwealth to introduce the type of immaterial, corroborative, or extraneous evidence . . . the Superior Court held is the only hearsay that Rule 542(E) allows"). In sum, the Commonwealth alleges the panel's decision "neuters Rule 542(E)'s explicit allowance of hearsay at preliminary hearings." *Id.* at 36; *see id.* at 20 (arguing Rule 542(E)'s "plain language" permits it to establish "one or more elements of the crime charged, or that the defendant was the person who committed the crime, through hearsay alone").[6]

---

[6] As they did in *McClelland*, *see McClelland*, 233 A.3d at 729-30, the Office of Attorney General ("OAG") and the Pennsylvania District Attorneys Association filed an *amicus curiae* brief on behalf of the Commonwealth broadly urging us to use this case as a vehicle (continued…)

Appellee advocates that we resolve this case in his favor on non-constitutional grounds. He assails the Commonwealth for supposedly dodging the issue before us by ignoring the import of Rule 542(D). That subsection, according to appellee, leaves "no doubt that" this Court "considers proof of the elements of an offense as being distinct from proof that the defendant was the one who committed the offense." Appellee's Brief at 15, *citing* Pa.R.Crim.P. 542(D) (requiring Commonwealth to prove a *prima facie* case "that (1) an offense has been committed and (2) the defendant has committed it"). Appellee claims this "was an affirmative choice in 2011 to explicitly distinguish the two separate requirements for establishing a *prima facie* case[.]" *Id*. at 16. And, when considered along with subsection (E), which permits "a limited right of hearsay evidence **only** for establishing some elements of an offense[,]" *id*. (emphasis in original), appellee believes "it is clear that the Commonwealth may not establish a *prima facie* case that the defendant committed the crime through hearsay, as it did in this case." *Id*. at 17. According to appellee, this straightforward reading of the rule renders it unnecessary to engage with the panel's "core elements" theory. *See id*. at 17-18.

In reply, the Commonwealth claims Rule 542(D) supports its position. It argues subsection (D) "defines the *prima facie* case as being 'that (1) an offense has been committed **and** (2) the defendant has committed it,' Rule 542(D) (emphasis added), and then says that hearsay 'shall be considered by the issuing authority in determining whether a *prima facie* case has been established,' Rule 542(E)." Commonwealth's Reply Brief at 2. The Commonwealth takes the position these "two provisions together show

---

"to articulate proper parameters for admission of hearsay in preliminary hearings." OAG's Brief at 4. From the *amici*'s perspective, this "should be a qualitative question, not a quantitative one[,]" because the "due process concern is a matter of reliability, not math." *Id*.; *see id*. at 17 ("when hearsay is admitted under circumstances providing indicia of reliability and a level of confidence that the Commonwealth will be able to produce admissible evidence at trial consistent with the evidence presented at the hearing, a defendant's due process rights are respected").

that the allowance of hearsay in 542(E) applies to both the defendant's identity and the commission of the crime." *Id.* at 2-3; *see id.* at 3 ("Nothing in the rule, nor the cases interpreting it, suggests that hearsay cannot be used to establish defendant's identity.") (emphasis omitted). In any event, the Commonwealth observes that "the rule states that hearsay 'shall be sufficient to establish any element of an offense," and it claims "our courts have spoken of the defendant's identity as an 'element' of the offense." *Id.*, *citing Commonwealth v. Bronshtein*, 691 A.2d 907, 915-16 (Pa. 1997).

## IV. Analysis

We have explained that, ordinarily, "an appellate court will review a grant or denial of a petition for writ of *habeas corpus* for abuse of discretion, but for questions of law, our standard of review is *de novo*, and our scope of review is plenary." *McClelland*, 233 A.3d at 732 (internal quotations and citation omitted). Here we are presented with a question of law regarding the scope of Pa.R.Crim.P. 542. *See Commonwealth v. Lopez*, 280 A.3d 887, 894 (Pa. 2022) ("The proper interpretation of a rule of criminal procedure is a question of law[.]"). In construing the Rules of Criminal Procedure, "the principles set forth in Pa.R.J.A. 104 to 115 shall be observed." Pa.R.Crim.P. 101(C). "The object of all interpretation and construction of rules is to ascertain and effectuate the intention of" this Court. Pa.R.J.A. 108 (a). "In construing the language, and giving it effect, we should not interpret the rule's words in isolation, but must read them with reference to the context in which they appear." *Lopez*, 280 A.3d at 897 (internal quotation marks, ellipses, brackets, and citation omitted). Moreover, "we may consult the explanatory comment of the committee which worked on the rule in determining the proper construction and application thereof." *Commonwealth v. Harth*, 252 A.3d 600, 617 (Pa. 2021); *see also* Pa.R.J.A. 108(c) (when the words of a rule are not explicit we may consider, among other

things, this Court's precedent interpreting the current rule, commentary accompanying the rule, and the rulemaking history).

As noted at the outset, our focus in this appeal is on subsections (D) and (E) of Rule 542. Subsection (D) states: "At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it." Pa.R.Crim.P. 542(D). Contrary to the Commonwealth's assertion this subsection "defines the *prima facie* case[,]" Commonwealth's Reply Brief at 2, it merely sets the applicable burden: to bind a defendant over for court, the Commonwealth must prove "a *prima facie* case" both with respect to the elements of the crimes **and** the defendant's identity. In this way, the rule reflects what has long been regarded as the primary reason for preliminary hearings in this Commonwealth: "It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, **or** for a crime with which there is no evidence of his connection." *Commonwealth ex rel. Maisenhelder v. Rundle*, 198 A.2d 565, 567 (Pa. 1964) (emphasis added). These are independent requirements, as the rule plainly sets forth, and failure to prove a *prima facie* case as to either prong is fatal to the Commonwealth's case.[7]

---

[7] We recognize our caselaw has created some uncertainty regarding whether "the rule-based delineation of a *prima facie* standard [is] meant in whole or in part to connote probable cause[.]" *Commonwealth v. Perez*, 249 A.3d 1092, 1106 (Pa. 2021) (Saylor, J., concurring). Over the years there have been "varying expressions of this Court" and, "[f]rom some of this Court's formulations, one might [ ] infer that the *prima facie* burden attaches only to the facet of the Commonwealth's obligation to prove that a crime has been committed, and that a separate probable cause standard pertains to demonstrating that the defendant was the perpetrator." *Ricker*, 170 A.3d at 503 (Saylor, C.J., concurring), *citing, e.g.*, *Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003) ("A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense."). Nevertheless, we cannot ignore that the "Rules of Criminal Procedure do not distinguish between abstract crime commission and identity in terms of the applicable standard at preliminary hearings." *Id.* (continued…)

This understanding of subsection (D)'s dual burdens informs our construction of subsection (E). *See McClelland*, 233 A.3d at 734 ("[W]e read the sections of Rule 542 together, and we construe them to give effect to all of the rule's provisions."); *accord* Pa.R.J.A. 108(b). Beginning with subsection (E)'s first sentence, it states: "Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established." Pa.R.Crim.P. 542(E). In *McClelland*, we observed the phrase "hearsay as provided by law" is less than clear, but that it "could reasonably mean hearsay as defined by law, *i.e.*[,] an out-of-court statement presented as evidence of the truth of the matter asserted." 233 A.3d at 735. Upon closer review, we now adopt this interpretation.

Read in context, the first sentence of subsection (E) is a codification of the precept that, "[t]raditionally, our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings[.]" Pa.R.E. 101, Cmt. Indeed, it authorizes the Commonwealth to present, and requires the preliminary hearing judge to consider, what would otherwise be inadmissible hearsay evidence. *See* Pa.R.E. 802 ("Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute."). Stated differently, the sentence operates as an exception to Pa.R.E. 802's general bar against the use of hearsay, as indicated in that rule's comment. *See* Pa.R.E. 802, Cmt. ("In preliminary hearings in criminal cases,

---

at 503 n.11, *citing* Pa.R.Crim.P. 542(D). We also observe that the apparent incongruity between our various articulations of the applicable burden and the actual text of Rule 542(D) may be easily explained: perhaps "a *prima facie* case" simply "entails a mere determination of probable cause." *Commonwealth v. Talley*, 265 A.3d 485, 517 (Pa. 2021). Some of our cases support this interpretation. *See, e.g.*, *Petition of McNair*, 187 A. 498, 501 (Pa. 1936) (equating *prima facie* case with probable cause). However, since this issue is not squarely before us, we do not opine on it further.

the court may consider hearsay evidence pursuant to Pa.R.Crim.P. 542(E) and 1003(E).").[8]

Even though Rule 542(E)'s first sentence requires the preliminary hearing judge to consider hearsay in determining whether a *prima facie* case has been established — which, as discussed above, means a *prima facie* case as to both the commission of a crime and the identity of the defendant — it says nothing about the sufficiency of such evidence to meet the applicable burden. Rather, that separate issue is governed by the sentence that immediately follows. The second sentence explains, "[h]earsay evidence shall be sufficient to establish any element of an offense, including, but not limited to, those requiring proof of the ownership of, non-permitted use of, damage to, or value of property." Pa.R.Crim.P. 542(E).

By its plain terms, this sentence speaks only to "element[s] of an offense," *id.*, which pertain solely to Rule 542(D)'s first requirement that the Commonwealth prove a *prima facie* case that "an offense has been committed[.]" Pa.R.Crim.P. 542(D). Notably, there is no mention whatsoever in subsection (E) of subsection (D)'s second and equally important burden on the Commonwealth to prove a *prima facie* case that "the defendant has committed it." *Id.* This strongly suggests hearsay relating to the identity of the

_____

[8] It is important to recognize Rule 542 is not concerned with non-hearsay — *i.e.*, a statement the declarant makes while testifying at the current trial or hearing or an out-of-court statement that is admissible for some relevant purpose other than to prove the truth of the matter asserted — or with admissible hearsay — *i.e.*, hearsay falling under a hearsay exception. It instead governs "inadmissible hearsay" which, unlike non-hearsay and admissible hearsay, "does not constitute legally competent evidence." *Verbonitz*, 581 A.2d at 174. Thus, while Rule 542 uses the word "hearsay," it more accurately refers to "inadmissible hearsay," since it is the use of legally incompetent, inadmissible hearsay evidence that raises due process concerns. *Cf. Commonwealth v. Riggins*, 386 A.2d 520, 523 (Pa. 1978) (where hearsay statement identifying defendant was admitted under dying declaration exception, "[t]his evidence alone . . . was sufficient in law to sustain the verdict").

offender is insufficient to prove a *prima facie* case under Rule 542. *See generally* Pa.R.J.A. 110(c) ("[e]xceptions expressed in a rule shall be construed to exclude all others").

What the text of the rule suggests, its comment confirms. It begins by echoing Pa.R.E. 101's observation that "traditionally our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings," but then specifically adds: "especially with regard to the use of hearsay to establish **the elements** of a *prima facie* case." Pa.R.Crim.P. 542, Cmt. (emphasis added). "Accordingly," it continues, "hearsay, whether written or oral, may establish **the elements of any offense**. The presence of witnesses to establish **these elements** is not required at the preliminary hearing." *Id.* (emphasis added). The comment clearly discusses hearsay only in the context of proving the elements of offenses; it makes no reference to using such evidence as a legitimate or legally competent means of proving a *prima facie* case as to a defendant's identity. The silence is telling.

Presumably recognizing neither the plain text of the rule, its comment, nor any caselaw supports its proposed reading of Rule 542(E), the Commonwealth makes one last-ditch attempt. It argues subsection (E) permits the use of hearsay to prove a *prima facie* case with respect to identity because "the rule's reference to 'elements' applies to the defendant's identity, which our courts have treated as an element like any other in the Commonwealth's evidentiary burden." Commonwealth's Brief at 27 n.5; *see* Commonwealth's Reply Brief at 3 ("our courts have spoken of the defendant's identity as an 'element' of the offense"). But we are unpersuaded.

It is generally true "that a crime conceptually consists of three elements: 'First, the occurrence of the specific kind of injury or loss . . .; secondly, somebody's criminality (in contrast, *e.g.*, to accident) as the source of the loss, — these two together involving the

commission of a crime by somebody; and, thirdly, the accused's identity as the doer of this crime.'" *Commonwealth v. Ware*, 329 A.2d 258, 274 (Pa. 1974), *quoting* 7 J. WIGMORE, EVIDENCE §2072, at 401 (3d ed. 1940) (emphasis removed). Along these lines, we have broadly referred to identity as an element of a crime in limited circumstances — namely, when discussing the admissibility of other crimes evidence. *See Bronshtein*, 691 A.2d at 915-16 ("The existence of a common scheme is relevant to establish any element of a crime (*e.g.* the identity or intent of the perpetrator) so long as it does not merely indicate the defendant's propensity to commit similar crimes."). Here, however, we are not concerned with the conceptual elements of crimes and we are not dealing with other crimes evidence. Instead, our task is limited to determining whether "identity" is considered an "element" for purposes of Rule 542. It is not.

Nothing in the rule or its comment suggests an intent to shoehorn identity as an element of the offense under Rule 542. On the contrary, all signs point the other way. As discussed, Rule 542(D) deliberately assigns to the Commonwealth a burden of proving a *prima facie* case in two different respects. The listing of dual requirements in subsection (D) strongly implies one is not a subset of the other. Moreover, as noted in *McClelland*, when Rule 542(E) was first promulgated in 2011, it "was of limited scope" — its primary purpose was to ease the Commonwealth's burden in "establish[ing] elements of property offenses." 233 A.3d at 733. Although the 2013 amendment expanded the rule's reach beyond property offenses, the expansion still was limited to elements of crimes, with no indication that identity was ever considered to be one for this purpose. Indeed, even the Crimes Code does not portray identity as an element of an offense in the sense the Commonwealth advocates. *See* 18 Pa.C.S. §103 (defining "[e]lement of an offense"). All

told, we find no support for the proposition that identity is an element of a crime for purposes of Rule 542(E) such that hearsay alone may be used to establish it.[9]

To summarize the state of the law regarding the use of hearsay at preliminary hearings, Rule 542(E) "is intended to allow some use of" otherwise inadmissible hearsay by the Commonwealth to establish a *prima facie* case that an offense has been committed. *McClelland*, 233 A.3d at 735. But "[t]he plain language of the rule does not state a *prima facie* case may be established solely on the basis of hearsay[,]" and to do so would violate due process in any event. *Id.* Finally, we now hold, based on the plain language of Rule 542, that inadmissible hearsay alone may not be used to prove a *prima facie* case as to the defendant's identity. This means the Commonwealth at a preliminary hearing is required to produce some non-hearsay or admissible hearsay evidence to sustain its *prima facie* burden as to the defendant's identity. *See Verbonitz*, 581 A.2d at 174 ("In order to satisfy [its] burden of establishing a *prima facie* case, the Commonwealth must produce . . . legally competent evidence to demonstrate the existence of facts which connect the accused to the crime charged.").

Despite affirming the Superior Court's holding, we disapprove its rationale in three respects. *See, e.g.*, *Commonwealth v. Chisebwe*, 310 A.3d 262, (Pa. 2024) ("because we review not reasons but judgments," we may uphold a lower court order for any valid reason appearing from record) (internal quotation marks and citations omitted). First, we do not endorse its discussion of "core" elements and the like, terms which do appear in

---

[9] The dissent accuses us of "creat[ing] an artificial distinction between the elements of the offense and the defendant's identity." Dissenting Opinion at 1. Respectfully, as we have explained, it is Rule 542's plain text that creates the distinction. And while it may be true that there is "no reason to treat identity differently from the statutory elements of the crime" at a preliminary hearing, the fact remains that "the current [r]ule does so." Concurring Opinion (Wecht, J.) at 10. In the present adjudicatory context, we are "bound to interpret the rule as currently written[.]" *Id.* at 11; *but see infra* n.10 (referring matter to Criminal Procedural Rules Committee).

the text of Rule 542. We also reject the panel's opinion to the extent it implies due process "require[s] **direct** evidence that the defendant was the person who committed the crime[.]" *Harris*, 269 A.3d at 547 (emphasis added). It has long been the law that "[d]irect evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." *Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973); *see Commonwealth v. Lovette*, 450 A.2d 975, 977 (Pa. 1982) ("The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence."). Put simply, circumstantial evidence and hearsay evidence are not opposite sides of the same coin, and Rule 542(E) only precludes the latter from serving as sufficient evidence to bound a case over for court. Third and finally, both the preliminary hearing judge and the panel seemed to believe that only non-hearsay evidence could suffice to establish a *prima facie* case as to appellee's identity. *See* N.T. Hearing, 9/16/20, at 6 (referencing lack of "non-hearsay evidence"); *Harris*, 269 A.3d at 547-48 (same). To reiterate, what matters to establish identity — what Rule 542 demands — is the use of legally competent evidence, such as non-hearsay evidence **or** admissible hearsay evidence falling under a hearsay exception. *Accord supra* note 8; *see McClelland*, 233 A.3d at 738 (Wecht, J., concurring) ("the result of a hearing so intertwined with one's liberty interests cannot rest exclusively upon evidence that is unreliable, inadmissible, and provides no assurances as to the future viability of a particular prosecution").

Order affirmed.[10, 11]

Justice Wecht joins the opinion, Justices Donohue and Brobson join the opinion with respect to Parts I-III, and join the plain-text analysis in Part IV.

Justice Donohue files a concurring opinion in which Justice Brobson joins.

Justice Wecht files a concurring opinion.

Justice Mundy files a dissenting opinion in which Chief Justice Todd joins.

---

[10] Our repeated entanglements with Rule 542 over the last few years have convinced us that "the hearsay-related amendments were not promulgated under ideal circumstances and that further reflection and refinement in the rulemaking arena is warranted." *Ricker*, 170 A.3d at 507 (Saylor, C.J., concurring); *see also Perez*, 249 A.3d at 1106 (Saylor, J., concurring) (highlighting "view that additional clarification of the '*prima facie*' standard governing preliminary hearings . . . is needed"); *McClelland*, 233 A.3d at 742 (Wecht, J., concurring) (opining that "hearsay should be eliminated from preliminary hearings as a substitute for eyewitness testimony, police testimony, or other testimony bearing upon the establishment of the material elements of a *prima facie* case"); *id*. at 749 (Baer, J., dissenting) (advocating "reasonable parameters for the admission of only those types of hearsay evidence that are the most reliable"). Consequently, we once more refer this matter to the Criminal Procedural Rules Committee for it to make recommendations to this Court regarding potential amendment of the rule.

[11] Should the Commonwealth determine it can carry its burden of proof consistent with this opinion, it remains free to "bring the matter again before any other officer empowered to hold a preliminary hearing." *Commonwealth v. Prado*, 393 A.2d 8, 9 (Pa. 1978); *see McClelland*, 233 A.3d at 736 n.11 (discharging defendant "without prejudice to the Commonwealth to refile charges and proceed with a new preliminary hearing"). We also remind the Commonwealth that, where intimidation is at issue, as it may have been here, *see* Commonwealth's Brief at 42 (asserting "intimidation was likely a factor here, where the victim told police that [appellee]'s brother contacted him while he was in the hospital after the shooting, offered to pay him to keep quiet, and told the victim he would kill him if he talked to police"), it can utilize the indicting grand jury. *See* Pa.R.Crim.P. 556(A) (permitting Commonwealth to "proceed with an indicting grand jury . . . in cases in which witness intimidation has occurred, is occurring, or is likely to occur"); Pa.R.Crim.P. 556.11(A)(2) (authorizing grand jury to indict "based upon evidence it has received, including hearsay evidence as permitted by law, or upon a presentment issued by an investigating grand jury, if the grand jury finds the evidence establishes a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it").