J-A02006-26

2026 PA Super 91

| | | |
|---|---|---|
| NATALIE PIERCE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| EMPOWER FINANCE INC. | : : | No. 609 WDA 2025 |
| Appellant | : | |

Appeal from the Order Entered April 17, 2025
In the Court of Common Pleas of Allegheny County
Civil Division at No:  GD 24-012584

BEFORE:  STABILE, J., MURRAY, J., and BECK, J.

OPINION BY STABILE, J.:                    **FILED: May 1, 2026**

Appellant, Empower Finance Inc. (Empower), seeks review of an order of the Court of Common Pleas of Allegheny County (trial court), overruling preliminary objections to compel arbitration, the terms of which were included in an online "browsewrap" agreement.[1]  We affirm.

Empower is a technology company which offers immediate cash advances of up to $300 through a smartphone app.  **See** Complaint, 11/5/2024, at para. 12-13.  Subscribers must download the app, link the app

---

[1] A "browsewrap" agreement is a type of contract in which a website offers terms that are disclosed only through a hyperlink to which the user purportedly manifests assent to those terms simply by continuing to use the website. **Berman v. Freedom Fin. Network, LLC**, 30 F.4th 849, 855-56 (U.S. 9th Cir. 2022); **see also Duffy v. Tatum**,  No. 483 EDA 2025, at *7 (Pa. Super. filed March 3, 2026) (describing various forms of online consumer contracts, including "browsewrap," "clickwrap," "scrollwrap," and "sign-in wrap").

to the subscriber's bank account and then agree to Empower's terms of service. *See id*. The principal of the cash advance, and attendant fees, are later debited by Empower from the linked bank account as soon as the subscriber's paycheck has been deposited. *See id*.

In November 2024, Appellee, Natalie Pierce (Pierce), individually and on behalf of all others similarly situated, filed a putative class action complaint against Empower. Pierce alleged that she had personally paid "an $8.00 express fee and an $8.00 monthly fee to obtain a $250.00 advance, which was to be repaid within ten days, which yielded a 234% APR." *Id*, at para. 26. According to Pierce, both she and other members of her putative class were charged amounts of loan interest which exceeded the rates permitted by the Pennsylvania Loan Interest and Protection Law (41 P.S. §§ 1-605), as well as the Consumer Discount Company Act (7 P.S. §§ 6201-6219). *See id*., at paras. 40-47.

Empower timely filed preliminary objections, seeking to compel alternative dispute resolution based on the Arbitration Agreement disclosed to subscribers when an Empower account is created. *See* Preliminary Objections, 1/24/2025, at paras. 10-17.[2] The process of creating an Empower account, and assenting to the Arbitration Agreement, was described by Empower as follows:

---

[2] Pa.R.Civ.P. 1028(a)(6) provides that any party to any pleading may file preliminary objections based on the existence of an "agreement for alternative dispute resolution."

11. To access the Empower application, users first need to download the app and open it on their mobile phone. Users then enter their phone number to sign up. A one-time 6-digit passcode is then texted to the user so that the user can authenticate his or her identity.

12. For users (including Pierce) who signed up for their Empower accounts before August 2023, prior to entering this one-time 6-digit code, the users were shown the following directly below where they enter the code: "You agree to our <u>Privacy Policy</u>, <u>Terms</u>, <u>E-Sign</u>, & <u>Subscription Agreement</u>."

13. Each of these underlined statements includes a hyperlink that directs users to those terms and polices. The user was then prompted to create an Empower account, including their name, email, birth date, and additional information about themselves.

14. The Terms inform the user on the very first page in bold letters: "**Please note that these Terms contain an Arbitration Agreement at the end under 'Dispute Resolution by Binding Arbitration.' Please read the Arbitration Agreement carefully as it requires you to resolve disputes with us through binding arbitration.**"

*Id*., at paras 11-14 (internal citations and graphics omitted, emphasis in original).

The Arbitration Agreement referred to in the "Terms" purports to obtain the subscriber's waiver of the right to a jury trial, as well as the right to participate in a class action, in the event of any claim or dispute arising between the subscriber and Empower:

You agree that any and all disputes or claims that have arising or may arise between you and Empower, whether arising out of or relating to these Terms (including any alleged breach), our Services, any advertising, any aspects of the relationship, or transactions between us, will be resolved exclusively through final and binding arbitration, rather than a court, in accordance with the terms of this Arbitration Agreement, except that you may assert individual claims in small claims court, if your claims

- 3 -

qualify. . . . **You agree that, by entering into these Terms, you and Empower are each waiving the right to a trial by jury or to participate in a class action**. **Your rights will be determined by a neutral arbitrator, not by a jury or jury.** The Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement.

*Id*., at Exhibit 2, p. 12 (emphasis added).

These arbitration terms became accessible to the subscriber on the fifth of over 20 screens that had to be completed to finalize the registration process. A subscriber would have to click on the hyperlinked term, "<u>Terms</u>,"



in order to do so. The fourth and fifth screens, shown in the graphic below, require confirmation of the subscriber's telephone number:

The left side of the above graphic (fourth screen in the registration process) required a subscriber to input a phone number. A six-digit confirmation code is then sent to that phone number, leading to the right side of the above graphic (fifth screen in the registration process), which required the subscriber to input the code. *See id*.

In the center of the latter (fifth) screen was the sentence, "You agree to our Privacy Policy, Terms, E-Sign & Subscription Agreement." *Id*. (underlines in original, demonstrative arrow graphic added). Each of the underlined terms in that sentence were hyperlinked to their corresponding contract provisions. Of relevance here, and as noted above, "Terms" was hyperlinked to the Arbitration Agreement which purported to obtain a subscriber's consent to waive the right to a jury trial and a class action suit. *See id.* A subscriber would not need to click on any of the hyperlinks to advance to the following screens of the registration process, or to complete the registration. The sixth screen would appear as soon as the correct confirmation code was entered by the subscriber on the fifth screen.

Based on this overall web design,[3] Empower argued that Pierce had received sufficient notice of the Arbitration Agreement during the registration process to give meaningful (and binding) assent to the Arbitration Agreement.

---

[3] The parties' dispute here does not concern the language of the Arbitration Agreement itself.

*See* Empower's Brief in Support of Preliminary Objections, 1/24/2025, at 9-14. That is, Empower asserted that it satisfied the objective inquiry in federal and Pennsylvania law as to whether a reasonable internet user in Pierce's position (a) received notice of the agreement to arbitrate and (b) manifested unambiguous assent to the waiver of the right to a jury trial. *See id*., at 14.

Further, Empower recognized that its Arbitration Agreement would likely not pass muster under this Court's then-controlling *en banc* decision in *Chilutti v. Uber Technologies*, *Inc*, 300 A.3d 430 (Pa. Super. 2023) (*en banc*) (*Chilutti I*). *See id*., at 15. We held in *Chilutti I* that, for the waiver of a jury trial in an online app to be enforceable, the "unambiguous manifestation of assent to arbitration" in a "browsewrap" agreement must be demonstrated by:

> (1) explicitly stating on the registration websites and application screens that a consumer is waiving a right to a jury trial when they agree to the company's "terms and conditions," and the registration process cannot be completed until the consumer is fully informed of that waiver; and (2) when the agreements are available for viewing after a user has clicked on the hyperlink, the waiver should not be hidden in the "terms and conditions" provision but should appear at the top of the first page in bold, capitalized text.

*Chilutti I*, 300 A.3d at 450.

The *Chilutti I* Court adopted its standard in recognition of this Commonwealth's aim of affording "the constitutional right to a jury trial . . . the greatest protection[.]" *Id*., at 449. The arguably less stringent federal test was eschewed by the *Chilutti I* Court because, under Pennsylvania law,

- 6 -

"a stricter burden of proof is necessary to demonstrate a party's unambiguous manifestation of assent to arbitration." ***Id***., at 449-50.

Empower urged the trial court not to apply ***Chilutti I*** because, at the time its preliminary objections were filed, the opinion was pending review before the Pennsylvania Supreme Court and Empower anticipated that the opinion was likely to be preempted by federal law. ***See*** Empower's Brief in Support of Preliminary Objections, 1/24/2025, at 15-18.

Pierce filed an opposition to Empower's preliminary objections. Citing ***Chilutti I***, she argued that the arbitration provisions were not valid because Empower's registration included no express waiver language stating that the constitutional right to a jury trial was being waived, and the waiver provisions themselves were not conspicuously presented. She emphasized further that the arbitration provisions were, essentially, buried within Empower's registration process, and that it was not clear from the app's web design whether simply inputting a confirmation code would manifest assent to the arbitration provisions accessible through the "Terms" hyperlink to Empower's browsewrap agreement. ***See*** Memorandum of Law in Opposition to Empower's Preliminary Objections, 2/6/2025, at 9-14.

Empower filed a reply to Pierce's opposition, again stressing that the arbitration terms were reasonably visible, or conspicuous, to its subscribers. ***See*** Reply to Opposition to Preliminary Objections, 4/10/2025, at 2-6. Empower reiterated that ***Chilutti I*** would likely be preempted because this

Court's opinion had adopted a "stricter burden of proof" for demonstrating assent to arbitration than the standard applied in federal law. *See id*, at 7-8.

After oral argument on Empower's preliminary objections, they were overruled, as the trial court found that Pierce had not waived the right to a jury trial, and that arbitration could not be compelled. Empower then filed a timely notice of appeal. *See* Pa.R.A.P. 311(a)(8) (stating that an appeal may be taken as of right from "[a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties"); *MacPherson v. Magee Memorial Hosp. for Convalescence*, 128 A.3d 1209, 1213 n.4 (Pa. Super. 2015) (*en banc*) ("An order refusing to compel a case to arbitration is a threshold, jurisdictional question, that is appealable as an exception to the general rule that an order overruling preliminary objections is interlocutory and not appealable as of right.") (citations omitted).

In its 1925(a) opinion, giving the reasons why its order should be affirmed, the trial court applied the rationale and holding of *Chilutti I* to conclude that the subject provisions requiring arbitration were not enforceable:

> [Empower] is correct that I primarily relied on [*Chilutti I*] to reach my decision as [*Chilutti I*] is the current controlling caselaw regarding the enforceability of "browsewrap" agreements in Pennsylvania. When terms and conditions to which a company wishes to bind a website or app user are available by clicking on a hyperlink, "a web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently "set apart" from the surrounding text." [*Chilutti I*,

300 A.3d at 448 (citing ***Berman v. Freedom Fin. Network, LLC***, 30 F.4th 849, 856-57 (U.S. 9th Cir. 2022))].

Here, [Empower] merely underscored ["<u>Terms</u>"] and did not utilize any other customary design elements to ensure that the hyperlinks were conspicuous to the user. More importantly, however, is [Empower's] failure to ensure that the user "unambiguously manifested their assent to be bound by the terms and conditions."

[Empower] argues that by entering the confirmation code on the same page as the hyperlinks to the terms, a user affirmatively assents to waive their right to a jury trial and be bound to the arbitration clause (among other terms and conditions). [***Chilutti I***] emphasizes the importance of ensuring that a user has "unambiguously manifested their assent to be bound by the terms and conditions," citing ***Berman*** that a "user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." [***Chilutti I***, 300 A.3d at 448 (citing ***Berman***, 30 F.4th at 857-58)].

[Empower's] registration process clearly fails this, as it does not even meet the minimum remedy suggested in ***Berman*** of including language such as "by clicking the . . . button, you agree to the terms and conditions." It is a leap to argue that a reasonably prudent interne user would assume that inputting the numbers of a continuation code affirmatively binds them to an arbitration agreement, simply because the numbers are entered on the same screen where the hyperlinks to the terms and conditions are provided. Even if [Empower] had met this minimum degree of notice, [***Chilutti I***] has determined that Pennsylvania wants to go further to protect a user's right to a jury trial by establishing a two-part test:

> 1) explicitly stating on the registration website and application screens that a consumer is waiving a right to a jury trial when they agree to the company's "terms and conditions," and the registration process cannot be completed until the consumer is fully informed of that waiver, and 2) when the agreements are available for viewing after a user has clicked on the hyperlink, the waiver should not be hidden in the

> "terms and conditions" provision but should appear at
> the top of the first page in bold, capitalized text.

*Id*. at 450.

> In addition to lacking an affirmative way to manifest assent and
> failing to sufficiently set apart the hyperlink text, [Empower] failed
> to state on the registration and application screen that a user was
> agreeing to be bound by an arbitration clause. Therefore,
> [Empower] fails the first prong of the test in [*Chilutti I*].

Trial Court 1925(a) Opinion, 7/10/2025, at 3-5 (indentations added, some internal citations omitted).

Empower now raises a single issue in its appellate brief – "Whether the trial court erred when it held that Pierce and Empower did not form an agreement to arbitrate, and therefore erred in overruling Empower's Preliminary Objections seeking to compel arbitration." Appellant's Brief, at 6.

"An order denying a petition to compel arbitration is an interlocutory order appealable as of right." *Fineman, Krekstein & Harris, P.C. v. Perr*, 278 A.3d 385, 389 (Pa. Super. 2022) (citation omitted); *see also* 42 Pa.C.S.A. § 7320(a)(1) (stating that an appeal may be taken from "[a] court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration."). "Whether an agreement to arbitrate disputes exists is a question of law." *Neuhard v. Travelers Ins. Co.*, 831 A.2d 602, 604 (Pa. Super. 2003). "When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law." *Id*. An arbitration agreement is enforceable under Pennsylvania law if it satisfies a two-part test: "The first

determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement." **Smay v. E.R. Stuebner, Inc.**, 864 A.2d 1266, 1270 (Pa. Super. 2004).

In the present matter, it is undisputed that the arbitration provision in Empower's browsewrap agreement is unenforceable under the first prong of the test adopted in **Chilutti I**. An *en banc* panel of this Court held in that case that a browsewrap agreement, like the one used by Empower, may only be enforced if it is "explicitly" stated on the application screens that, by agreeing to the company's terms and conditions, the "consumer is waiving a right to a jury trial." **Chilutti I**, 300 A.3d at 450.

As the trial court noted, Empower's online application lacked "an affirmative way to manifest assent" to the waiver of the right to a jury trial, did not "sufficiently set apart the hyperlink text" containing the arbitration agreement, and did not "state on the registration and application screen that a user was agreeing to be bound by an arbitration clause." Trial Court 1925(a) Opinion, 7/9/2025 at 5.

However, Empower's inability to satisfy the first prong of the **Chilutti I** is not alone dispositive. Our Supreme Court vacated that opinion and quashed the appeal upon finding that the order on review (granting a petition to compel arbitration and staying court proceedings) did not qualify as an immediately reviewable collateral order. **See Chilutti v. Uber Tech., Inc.**, 349 A.3d 826, 834-35 (Pa. 2026) (**Chilutti II**). **Chilutti I**, by *itself*, therefore has no

precedential value, and this Court is not bound by that vacated opinion to apply a "stricter burden of proof" upon Empower to establish that Pierce waived the right to a jury trial.

Crucially, though, the Court in *Chilutti II* based its holding solely on procedural grounds. The *Chilutti II* Court's lack of jurisdiction prevented it from either approving *or* disapproving of the two-prong test applied by this Court in *Chilutti I*. Following *Chilutti II*, it became an open question whether the test employed in *Chilutti I* comports with Pennsylvania and federal law.

Recently, in a post-*Chilutti II* published opinion, *Duffy v. Tatum*, No. 483 EDA 2025 (Pa. Super. filed March 3, 2026), a panel of this Court reviewed a trial court's denial of preliminary objections seeking to compel arbitration terms found in an online agreement. The arbitration terms were contained in "hyperlinked terms of service on a website that [the user] never clicked on, viewed, or read." *Id*., at *3.

The *Duffy* Court echoed *Chilutti I's* staunch support for the constitutional right to a jury trial, holding that "a strict burden of proof is necessary to demonstrate a person's unambiguous manifestation of assent to arbitration." *Duffy*, No. 483 EDA 2025, at *7. The Court then applied the two-prong test of *Chilutti I* and held that the subject arbitration terms had not been "prominently displayed" enough to give notice that completing the online registration would constitute a waiver of the constitutional right to a jury trial:

This standard has not been met here. Duffy never clicked on the hyperlink providing the terms of service. Dolly's website and application screen does not explicitly state that the consumer is waiving their right to a jury trial when they agree to the terms of service. Duffy was able to complete his registration process without being fully informed of the waiver of his right to a jury trial. The hyperlink that opens the terms of service hides the arbitration agreement within the middle of the document and does not place it in prominently in the document. Further, the arbitration provision never defines arbitration and does not state explicitly that a user is waiving his right to trial by jury. Therefore, it is clear Duffy was never informed in an explicit and upfront manner that he was waiving his constitutional right to seek damages through a jury trial.

* * * *

We therefore find the trial court did not err in overruling Dolly's preliminary objections. Duffy never saw the terms of service and did not unambiguously assent to arbitration. Dolly's website did not provide reasonably obvious notice of its terms of service and, consequently, there was no meeting of the minds. As such, the order of the trial court is affirmed.

***Id***., at *8.[4]

***Duffy*** is not just instructive, but also controlling in the instant case. "As we often recognize, a prior published opinion issued by a panel of this Court constitutes binding precedential authority." ***Commonwealth v. Harris***, 269 A.3d 534, 539 (Pa. Super. 2022) (citation omitted). Accordingly, we are

---

[4] This Court made clear in ***Duffy*** that it was "borrow[ing] substantially from this Court's well-founded *en banc* decision in [***Chilutti I***,]" and that the degree of protection it afforded to the right to a jury trial was "consistent with" that *en banc* decision. ***Duffy v. Tatum***, No. 483 EDA 2025 at *n2 (Pa. Super. filed March 3, 2026).

bound here to apply standards first articulated in **_Chilutti I_** and then expressly

adopted in our precedential opinion in **_Duffy_**.

Here, Empower's application screens did not explicitly state that Pierce

would be waiving the right to a jury trial by agreeing to Empower's "terms and

conditions," or that the registration process could not be completed until the

consumer is fully informed of that waiver.  Thus, we hold that the trial court

did not err in overruling Empower's preliminary objections seeking to compel

arbitration.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/1/2026